ALBANY COUNTY SAVINGS BANK, Respondent, *v.* THOMAS McCARTY et al., Appellants.

| | |
|---|---|
| 149 | 71 |
| 154 | 530 |
| 149 | 71 |
| 160 | 56 |
| 149 | 71 |
| 161 | 88 |

1. EVIDENCE — EFFECT OF CERTIFICATE OF ACKNOWLEDGMENT. A certificate of acknowledgment should not be overthrown upon evidence of a doubtful character, such as the unsupported testimony of interested witnesses, nor upon a bare preponderance of evidence, but only on proof so clear and convincing as to amount to a moral certainty.

2. ·WHAT MATTERS PROVED BY CERTIFICATE OF ACKNOWLEDGMENT — CODE CIV. PRO. §§ 935, 936. The personal appearance of the party, the recognition of the signature as his, and the acknowledgment of execution are included among the facts of which a certificate of acknowledgment should be regarded as evidence *per se*, under sections 935 and 936 of the Code of Civil Procedure.

3. PROBATIVE FORCE OF CERTIFICATE GIVEN BY STATUTE — CODE CIV. PRO. § 935. The words of a certificate of acknowledgment become evidence of what they import and acquire probative force by command of section 935 of the Code of Civil Procedure, making the instrument certified evidence without further proof thereof.

4. PRIMA FACIE CASE — CERTIFICATE EQUIVALENT TO WITNESS. A certificate of acknowledgment, when read in evidence, makes out a *prima facie* case as strong as if the facts certified had been duly sworn to in open court by a witness apparently disinterested and worthy of belief.

5. APPEAL — REVIEW OF REFEREE'S FINDING — CERTIFICATE OF ACKNOWLEDGMENT. A referee's finding in support of the validity of a certificate of acknowledgment against rebutting evidence is not open to review by the Court of Appeals, since the certificate alone, although not conclusive (Code Civ. Pro. § 936) is sufficient to make a case for the jury against evidence in rebuttal, whatever that may be.

6. WITNESS — INTEREST OF SURVIVING HUSBAND — CODE CIV. PRO. § 829. A tenancy by the curtesy initiate in lands which the wife has the lawful right to sell or devise does not make the husband a person interested so as to render him incompetent, under section 829 of the Code of Civil Procedure, as a witness, after the death of ·the wife, in a suit to foreclose a mortgage on such lands made by the wife, even if he joined in the mortgage.

7. COMPETENCY OF SURVIVING HUSBAND TO TESTIFY ON BEHALF OF HEIRS OF WIFE. A co-obligee on his wife's bond secured by mortgage on her property, who is also administrator of her estate and entitled to one-third of the net assets, is not, in a suit to foreclose such mortgage, in which he has served no answer, either personally or as administrator, incompetent to testify on behalf of his children, whose interest in the property is derived, not from him, but by direct inheritance from his wife.

*Albany Co. S. Bank* v. *McCarty*, 71 Hun, 227, reversed.

(Argued February 28, 1896; decided April 7, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made September 18, 1893, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Isaac H. Maynard* for appellants. The evidence was insufficient to support the finding of the referee, that the defendants' mother, Ellen McCarty, executed, acknowledged or delivered to the plaintiff the bond and mortgage in question. (Code Civ. Pro. § 936 ; *Jackson* v. *Humphrey*, 1 Johns. 498 ; *Jackson* v. *Schoonmaker*, 4 Johns. 161 ; *Jackson* v. *Hayner*, 12 Johns. 469 ; *Jackson* v. *Perkins*, 2 Wend. 308 ; *Thurman* v. *Cameron*, 24 Wend. 87 ; *Michener* v. *Cavender*, 38 Penn. St. 334 ; *Borland* v. *Walrath*, 33 Iowa, 130 ; *Lowell* v. *Wren*, 80 Ill. 238 ; *Dodge* v. *Hollingshead*, 6 Minn. 25 ; *Annan* v. *Folsom*, 6 Minn. 500.) The referee erred in sustaining the objections made to the questions put to the witness Thomas McCarty, which, if allowed, would have shown, or tended to show, that he was not authorized by Ellen McCarty to sign her name to the bond and mortgage in question. (*Whitehead* v. *Smith*, 81 N. Y. 151 ; *Carpenter* v. *Soule*, 88 N. Y. 251 ; *Holcomb* v. *Campbell*, 118 N. Y. 46 ; *Eisenlord* v. *Clum*, 126 N. Y. 552 ; *Porter* v. *Dunn*, 131 N. Y. 314 ; *Stephens* v. *Cornell*, 32 Hun, 414 ; *Cunningham* v. *Whitford*, 74 id. 273 ; *Lyon* v. *Whittaker*, 77 id. 107 ; *Olcott* v. *Kohlsaat*, 27 N. Y. S. R. 900.) The referee erred in refusing to allow the defendants to show that Thomas McCarty was not acting as the agent of Ellen McCarty in the transaction of her business. (*Russell* v. *B. T. Seminary*, 73 Ill. 337.)

*E. Countryman* for respondent. The referee's findings of fact, from the evidence, were properly left undisturbed by the General Term ; and those findings, upon the circumstances disclosed in this case, are conclusive in this court. (*Baird*

v. *Mayor, etc.*, 96 N. Y. 567, 576, 577 ; *Lowery* v. *Erskine*, 113 N. Y. 52, 55 ; *Aldridge* v. *Aldridge*, 120 N. Y. 614, 617 ; *Devlin* v. *G. S. Bank*, 125 N. Y. 756 ; *Barnard* v. *Gantz*, 140 N. Y. 249, 253 ; *Cook* v. *N. Y. El. R. R. Co.*, 144 N. Y. 115, 117 ; *Von Wien* v. *S. U. & N. Ins. Co.*, 118 N. Y. 94, 95, 98 ; *Westerlo* v. *De Witt*, 36 N. Y. 340 ; 57 N. Y. 597 ; *Sherwood* v. *Hauser*, 94 N. Y. 627 ; *Stilwell* v. *M. L. Ins. Co.*, 72 N. Y. 385.) No proof was required that the certificates of acknowledgment were genuine. (Code Civ. Pro. §§ 935, 937 ; *Holbrook* v. *N. J. Zinc Co.*, 57 N. Y. 616, 617, 624 ; *Canandarqua Academy* v. *McKechnie*, 19 Hun, 63 ; *Thurman* v. *Cameron*, 24 Wend. 87 ; *Meagles* v. *Martin*, 93 Ky. 50 ; *Holmes* v. *Hunt*, 122 Mass. 505 ; *Howard* v. *Moot*, 64 N. Y. 262 ; *Bd. Comrs.* v. *Merchant*, 103 N. Y. 143 ; *Young* v. *Duvall*, 109 U. S. 573 ; *Ins. Co.* v. *Nelson*, 103 U. S. 544.) There is legal evidence to sustain the findings of the referee as affirmed by the General Term. (*Johnson* v. *Van Nelson*, 43 Mich. 209 ; *Kerr* v. *Russell*, 69 Ill. 667, 673 ; *Russell Case*, 73 Ill. 339 ; *Tunison* v. *Chambling*, 88 Ill. 389 ; *Wood* v. *Bach*, 54 Barb. 134 ; *Rexford* v. *Rexford*, 7 Lans. 6 ; *Bodine* v. *Killeen*, 53 N. Y. 93 ; *Noel* v. *Kinney*, 106 N. Y. 74.) The claim that there was no delivery on the part of Mrs. McCarty of the bond and mortgage is untenable as possession of the papers by the plaintiff was *prima facie* evidence of delivery. (*Kronichfelt* v. *Slattery*, 66 N. Y. S. R. 526 ; *Strough* v. *Wilder*, 119 N. Y. 530 ; *Holbrook* v. *N. J. Zinc Co.*, 57 N. Y. 624 ; *Grim Case*, 51 Penn. St. 219 ; *Keyser* v. *Keene*, 17 Penn. St. 327 ; *Blankman* v. *Valejo*, 15 Cal. 640 ; *Union Bank* v. *Ridgeley*, 1 H. & G. [Md.] 326, 418 ; *Griffin Case*, 125 Ill. 431, 436 ; *Ward* v. *Lewis*, 4 Pick. 520 ; *Ford* v. *McCarthy*, 61 N. Y. S. R. 363.) The defendants are precluded by estoppel from availing themselves of any act or omission of Thomas McCarty, or the commissioner of deeds, relating to the execution of the bond and mortgage on the part of the deceased. (*M. L. Ins. Co.* v. *Corey*, 135 N. Y. 326.) There was no error in rejecting the testimony of Thomas McCarty, the husband, to show by conversations

and communications between him and his deceased wife that he was not authorized by her to sign her name to the bond and mortgage in question. (*In re Camp,* 126 N. Y. 377; *Hatfield* v. *Sneden,* 54 N. Y. 280; *Robins* v. *McClure,* 100 N. Y. 328; *Barnes* v. *Underwood,* 47 N. Y. 351; *Ransom* v. *Nichols,* 22 N. Y. 110; *Ryder* v. *Hulse,* 24 N. Y. 372; Code Civ. Pro. §§ 829, 2756; *Munoz* v. *Wilson,* 111 N. Y. 299; *O'Flynn* v. *Powers,* 136 N. Y. 413, 419; *Platt* v. *Platt,* 105 N. Y. 488, 489; *Sharpe* v. *Freeman,* 45 N. Y. 802.)

VANN, J. This action was brought to foreclose a mortgage, which, together with the accompanying bond, purports to have been executed on the 25th of April, 1887, by Ellen McCarty, the owner in fee of the lands affected, and by Thomas McCarty, her husband, to secure the payment to the plaintiff of the sum of $8,000 besides interest. On the 11th of May, 1887, sixteen days after the alleged execution and delivery of the bond and mortgage, Ellen McCarty died, intestate, and her husband was subsequently appointed administrator of her estate, but, although made a party to the action, both in his representative capacity and as an individual, he interposed no defense. Five infant children of the decedent appeared by guardian and served a general answer, while the only remaining child, who was an adult at the time, served a separate answer, denying that said bond and mortgage were executed or delivered by her mother. The referee found in favor of the plaintiff upon the issue thus joined, and the judgment entered on his report has been affirmed by the General Term. The first question presented for review is, whether there was evidence enough to support the findings of the referee, under the rule governing appeals to this court.

Upon the trial the plaintiff read in evidence the bond and mortgage, with the certificates of acknowledgment in due form attached, and, without further evidence on the subject of execution, rested its case. The defendants thereupon gave evidence tending to show that Mrs. McCarty neither signed

nor executed either instrument. Some facts bearing upon the question in dispute were either found by the referee or are virtually conceded to be true, and among them the following: On the 25th of April, 1887, when the papers purport to have been acknowledged, Mrs. McCarty was afflicted with alcoholic paralysis, which so affected her arms and hands that she could neither hold a pen nor write her name. She was unable to leave her house or room at the time, but was confined to her bed. She did not in fact sign either instrument, but her name, as subscribed, is in the handwriting of her husband. Charles J. Krank, a commissioner of deeds, certified to the acknowledgment of both husband and wife. Thomas McCarty, the husband, was at the time somewhat involved financially, but was carrying on business, and for that purpose was using the property, both real and personal, of his wife. He was interested in business ventures with one Shubal Kelly, who, as indorser or surety, had become liable for him to the extent of $13,000. On the same day that the bond and mortgage purport to have been executed a chattel mortgage appears to have been given by Mr. and Mrs. McCarty to said Kelly, and acknowledged before Mr. Krank. Both names to this instrument were in fact signed by the husband, and the defendants claim that the certificates of the commissioner to all of these papers are false, so far as Mrs. McCarty is concerned.

Mr. McCarty, in the name of his wife, negotiated the loan from the plaintiff and attended to the execution of the bond and mortgage. He received them in person from the attorney who prepared them, and in person returned them, on the same or the next day, with the signatures and certificates attached, as they appeared on the trial. The plaintiff did not pay over the money until the seventh of May, nor until a power of attorney had been furnished, purporting to have been executed by Mrs. McCarty on that day before David H. Stanwix, as commissioner of deeds, authorizing her husband to act for her in many respects, and among others, " to sign and deliver notes, checks and drafts; to deposit moneys and draw the

same by check, or otherwise as he shall see fit; also to lease
any and all real estate, or interest in real estate of which I am
now seized or possessed, or otherwise sell or dispose of the
same absolutely in fee simple;   *   *   *   to sign, seal,
execute and deliver deeds, conveyances," etc.   The plaintiff,
upon receiving this power of attorney, drew a check on
another bank for the amount of the loan, payable to the order
of Mrs. McCarty, and delivered it to her husband, who
indorsed it in her name as well as his own and deposited it to
his credit in the bank upon which it was drawn.

No part of the principal of the mortgage in suit has been
paid.   The interest was paid to September 1, 1889, the last
payment having been received on the fourteenth of that
month, but it did not appear by whom any of said payments
were actually made.   Mr. Krank, the commissioner who cer-
tified the acknowledgments to the bond and mortgage, was
called as a witness by the defendants, and testified that he
took the acknowledgments at his office upon the day they
bear date; that McCarty and Kelly came there and the for-
mer acknowledged both instruments for himself and took
them away, saying they would soon return; that later in the
day Kelly returned with a woman, whom he introduced as
Mrs. McCarty, and who acknowledged the papers as Mrs.
McCarty; that he made the certificates as to her upon that
introduction, and that he was never at the residence of Mrs.
McCarty.

The cross-examination of this witness showed an infirm
memory, and the record suggests some temporary disability
on his part that caused mental confusion.   Contradiction fol-
lowed contradiction, until the numerous mis-statements called
for some explanation other than the mere lapse of four years
from the date when he acted and the time when he testified.
On repeated occasions prior to the one under consideration, he
had certified to the acknowledgment by Mrs. McCarty of
various instruments, some of them signed by her husband in
her name and others by her own hand, but none of which
appear to have ever been questioned by her.   He testified that

the same woman acknowledged the bond and mortgage in suit who acknowledged the other instruments.

A sister of Mrs. McCarty, who lived in the family as a servant and spent more or less time in the sick room; a daughter, who was all over the house, attending to household duties; a son, who went to school; another servant, who did the washing and ironing, and the attending physician, who called professionally in the usual way, gave evidence tending to show that Mrs. McCarty did not leave her room on the 25th of April, 1887, and that Krank did not come to the house on that day. Mr. McCarty testified that he repeatedly signed his wife's name to written instruments, and that he did not go to his house with Krank on the day that the bond and mortgage are alleged to have been acknowledged. Mr. Kelly was dead at the time of the trial. Mr. Stanwix, who certified the power of attorney, when called as a witness by the defendants, testified that he went with Mr. McCarty to his home and there took the acknowledgment of Mrs. McCarty to that instrument while she was in bed. The paper had previously been signed in Mrs. McCarty's name by her daughter, who did it at the request of her father, Thomas McCarty. Stanwix further testified that he made the mark for Mrs. McCarty, after reaching her room; that he was not prepared to say that he showed the mark to her, but that he did ask her if that was her signature for the purposes therein, and she acquiesced. She said nothing, so far as he could remember, but, as he thought, was conscious enough to recognize what he said. According to his best recollection, he informed her that the paper was a power of attorney, and when he asked her the question as to the signature she nodded her head; "that there was a recognition in some way;" "that she kind of recognized what I said, kind of a move of the head." The testimony of this witness was not clear, nor altogether consistent. While he used slight care to learn whether this sick woman consciously and understandingly made the acknowledgment, according to such recollection as he had, if he is to be believed, he told her what the paper was, asked her "if

that was her signature," and she nodded or moved her head in acquiescence.    This was four days before Mrs. McCarty died, during which period, as her attending physician testified, she was in a semi-conscious state, but "could understand a fair question put to her and could indicate her answer either by 'yes' or 'no,' or by an act."

The case of the plaintiff rested substantially upon the official certificates to the bond and mortgage, as corroborated and confirmed by the power of attorney and the certificate thereto, while the defendants' case depended mainly upon the circumstances, conceded or not disputed, and the oral testimony, already alluded to.    Did this state of the evidence present a question of fact for the referee, so that his conclusion is final in this court?    The question is not whether the finding is against the weight of evidence, but whether it is without any evidence upon which a finding of fact can reasonably be made in favor of the plaintiff, in view of the evidence presented by the defendants.    We are thus brought to consider the effect of certificates of acknowledgment as evidence.

It is provided by the Code of Civil Procedure that " a conveyance, acknowledged or proved, and certified in the manner prescribed by law to entitle it to be recorded in the county where it is offered, is evidence, without further proof thereof." (§ 935.)    This section does not in terms say that the certificate is evidence, but that a certified conveyance is evidence ; still, as it is made evidence " without further *proof* thereof," that is, of the conveyance, the fair implication is that the certificate is regarded as proof to some extent.    This finds support in the next section, which provides that the certificate " is not conclusive, and it may be rebutted and the effect thereof contested by a party affected thereby."    (§ 936.)

The provisions of the Revised Statutes upon the subject were similar, but not identical, as they authorized every conveyance, acknowledged or proved according to law, to be " read in evidence without further proof thereof."    The certificate, however, was not to " be conclusive, but" might " be rebutted, and the force and effect thereof contested by any

party affected thereby." (1 R. S. [1st ed.] p. 759, §§ 16 & 17 ; 3 R. S. [5th ed.] p. 54, §§ 40 & 41.) The Revised Laws were to the same effect as the Revised Statutes. (1 R. L. ch. 87, p. 371, §§ 6 & 7.) We find but few decisions under these stat- utes that bear upon the question.

In *Jackson* v. *Schoonmaker*, (4 J. R. 161) the defendant offered to show that one of several grantors, at the time he "made the acknowledgment certified on a deed," was *non compos mentis*, but the evidence was rejected. This was held error, the court, in a *Per Curiam* opinion, saying : " The acknowledgment and proof of deeds is merely for the purpose of recording them, and is not conclusive on the opposite party. The proof or acknowledgment is necessarily *ex parte*, and the party who is to be affected by the deed ought, at any time, to be allowed to question its validity and the force and effect of the formal proof. To consider the certificate of the judge as conclusive on this subject would produce manifest injustice."

In *Thurman* v. *Cameron*, (24 Wend. 87, 92) the court said : " The practice is to take a certificate, which appears on its face to be in conformity with the statutes, as proof of its own genuineness. * * * Certificates of this character are not treated by the statutes as more than *prima facie* evidence, nor are they more, either in respect to their own regularity or the facts which they are adduced to prove. They are open to attack in a great variety of ways. They are, however, by recent statutes, made receivable to authenticate almost every kind of instrument, and to consider them less than *prima facie* evidence, *per se*, would render them literally useless."

In *Remington Paper Co.* v. *O'Dougherty* (81 N. Y. 474, 483) it was declared that "the statute makes a deed, duly acknowledged or proved and certified by any officer author- ized to take the acknowledgment of deeds, evidence, without further proof of execution."

To the same effect is *Ludlow* v. *Warshing* (108 N. Y. 520, 522) and *Morris* v. *Keyes* (1 Hill, 540, 542).

See also as bearing upon the subject, more or less directly, *Clark* v. *Clark* (47 N. Y. 664) ; *Holbrook* v. *New Jersey Zinc*

*Co.* (57 N. Y. 616, 624); *Irving* v. *Campbell* (121 N. Y. 353, 359).

The rule governing the action of trial courts, as well as appellate courts, with power to review the facts, seems to be uniform in all the states to the extent of requiring that a certificate of acknowledgment should not be overthrown upon evidence of a doubtful character, such as the unsupported testimony of interested witnesses, nor upon a bare preponderance of evidence, but only on proof so clear and convincing as to amount to a moral certainty. (*Young* v. *Duvall*, 109 U. S. 573; *Lickmon* v. *Harding*, 65 Ill. 505; *Pringle* v. *Dunn*, 37 Wis. 449; *Shields* v. *Netherland*, 5 Lea [Tenn.], 193; *Grotenkamper* v. *Carver*, 9 Lea [Tenn.], 280; *Riecke* v. *Westenhoff*, 10 Mo. App. 358; *Williams* v. *Robson*, 6 Ohio St. 510; *Johnson* v. *Van Velsor*, 43 Mich. 208; *Phillips* v. *Bishop*, 35 Neb. 487; *Landers* v. *Bolton*, 26 Cal. 406; *Waltee* v. *Weaver*, 57 Tex. 569.)

In some jurisdictions it is held to be conclusive in the absence of fraud or duress, in others absolutely conclusive, as a judicial act, and in others still as *prima facie* evidence. (*Homeopathic Mut. Life Ins. Co.* v. *Marshall*, 32 N. J. Eq. 103, and notes on pages 104–111; 2 Cowen & Hill's Notes, 494.)

The following expressions of learned judges indicate the nature of the proof required to impeach a certificate of acknowledgment. It must be of a " clear, complete and satisfactory character;" (*Young* v. *Duvall*, 109 U. S. 573, 577): " clear, cogent and convincing;" (*Pierce* v. *Feagans*, 39 Fed. Rep. 587, 592): " clear, convincing and conclusive, reaching a high degree of certainty, leaving upon the mind no fair, just doubts;" (*Smith* v. *McGuire*, 67 Ala. 34): "so full and satisfactory as to convince the mind that the certificate is false or forged;" (*Griffin* v. *Griffin*, 125 Ill. 431, 436): "it should by its completeness and reliable character, fully and clearly satisfy the court that the certificate is untrue and fraudulent;" (*Marston* v. *Brittenham*, 76 Ill. 611); "clear and conclusive, excluding every reasonable doubt;" (*Strauch* v. *Hathaway*, 101 Ill. 11): " so clear, strong and convincing

as to present no loophole of escape from its power;" (*Canal & Dock Co.* v. *Russell*, 68 Ill. 426, 438). The certificate "makes a *prima facie* case. That is the least that can be claimed for it;" (*Borland* v. *Walrath*, 33 Iowa, 130): It "is, of itself, entitled to more weight than the testimony by which it is attacked," which was that of the two mortgagors; (*Bearss* v. *Ford*, 108 Ill. 26, 27): It "ought to be regarded as of as high a grade of evidence as testimony given under oath;" (*Warrick* v. *Hull*, 102 Ill. 280, 283): "Whenever the fact is fairly debatable, the presumption of law must prevail;" (*Hughes* v. *Coleman*, 10 Bush. (Ky.) 246).

It "is entitled to great and controlling weight until overcome by clear and satisfactory proof;" (*Blackman* v. *Hawks*, 89 Ill. 512, 514): "No matter what the magistrate may have sworn to on the trial, the plaintiffs were entitled to have his official certificate go to the jury;" (*Heeter* v. *Glasgow*, 79 Penn. St. 79, 80): "The mere evidence of the party purporting to have made the acknowledgment cannot overcome the officer's certificate, nor will it be with slight corroboration." (*Russell* v. *Baptist Theological Union*, 73 Ill. 337, 341).

In Thomas on Mortgages it is said that "as to the statements of fact contained in a certificate of acknowledgment which is regular in form, such for instance, as the fact that the grantor appeared and acknowledged the execution of the instrument, they can only be impeached for fraud." (Thomas on Mortgages, vol. 1, § 500).

Mr. Wharton says that "the true view is that the certificate of acknowledgment is *prima facie* proof of the facts it contains, if within the officer's range, but is open to rebuttal between the parties by proof of gross, concurrent mistake or fraud." (Wharton on Evidence, § 1052.) Mr. Devlin in his work on deeds says that "the certificate standing by itself, without other proof, is *prima facie* evidence of all that it rightfully contains. While not conclusive, it is entitled to the utmost consideration. * * * We regard it as sufficient proof if, after weighing all the probabilities, the evidence

shall clearly and strongly preponderate in favor of the party attacking the acknowledgment. If, however, the probabilities balance each other, the soundest principles of public policy and respect for the security of land titles, demand that the certificate of acknowledgment should not be set aside." (Devlin on Deeds, § 534, p. 540.)

It is settled in this state that the act of taking and certifying an acknowledgment is not judicial, but ministerial in character and this accords with the rule in most of the states. (*Lynch* v. *Livingston*, 6 N. Y. 422 ; 1 Am. & Eng. Encyc. of Law [2nd ed.], 487.) While our statute makes the certificate evidence, it does not define its force, as such, except by providing that it shall not be conclusive. The learned counsel for the appellants contends that it establishes a mere presumption " that cannot contradict facts or overcome facts proved," but this might set a vast amount of property adrift, for the title to every parcel of land in the state may rest wholly upon a certificate of acknowledgment. To hold that it merely shifts the burden of proof would be a narrow and unsafe rule and would overlook the nature of the act required of the certifying officer. To insure authenticity, so that a conveyance may be safely recorded, or read in evidence without direct proof, the law provides that certain officers may certify to certain facts relating to the execution of the instrument. Those facts tend to show that the conveyance was executed at the time, place, and by the person named. (1 R. S. 758, §§ 9 and 15.) It is the duty of the officer making the certificate to ascertain, under the responsibility of his oath of office, the truth of the matters in relation to which he certifies and the legal presumption is that he does his duty. (Throop's Public Officers, § 558.) If he wilfully certifies falsely, he is guilty of a felony. (Penal Code, § 510.) This shows the importance that the law attaches to his act and furnishes a safeguard to society for the proper performance of his duties. As an instrument " certified in the manner prescribed by law," is made " evidence " by statute, " without further proof thereof," a reasonable construction requires that the state-

ments properly appearing in the certificate should be regarded as evidence of the facts stated, including the personal appearance of the party, the recognition of the signature as his, and the acknowledgment of execution. Adequate force to the word " evidence," as used in section 935, can be given in no other way. " Evidence without further proof " indicates that the facts certified are proof *per se.* Thus the words of the certificate become evidence of what they import and acquire probative force by command of the statute.

The officer, by a solemn official act, certifies to the acts and declarations of the person appearing before him, and those acts and declarations are thereby stamped with the character of evidence, tending to establish whatever those acts and declarations would establish if proved by oral testimony in a court of justice. We think that, as between the parties, a certificate of acknowledgment, when read in evidence, makes out a *prima facie* case as strong as if the facts certified had been duly sworn to in open court by a witness, apparently disinterested and worthy of belief. The legal presumption of the proper performance of official duty by a public officer requires that this effect should be given it. (*Downing* v. *Rugar,* 21 Wend. 178.) While the evidence is not conclusive, as the statute provides that " it may be rebutted and the effect thereof contested by a party affected thereby," it is of such a character as, standing alone, to send a case to the jury, so that they may decide between the probative force of the certificate, supported by the presumption that it states the truth, on the one hand, and the evidence produced in rebuttal, whatever it may be, on the other.

We are thus led to the conclusion that the facts found by the referee were so supported by evidence as not to be open to review upon appeal to this court.

We cannot, however, affirm the judgment because we think that the evidence of Thomas McCarty in relation to certain alleged communications between himself and his wife was improperly rejected as incompetent under section 829 of the Code of Civil Procedure. The evidence, so excluded, tended

to show that Mrs. McCarty had not authorized her husband to sign her name to the papers in question, and that she did not know he had done so. The referee found that she executed and delivered the bond and mortgage, and refused to find that she did not authorize any person to sign them for her. This evidence bore somewhat upon the probabilities of whether she acknowledged the papers or not, and hence the defendants had the right to have it considered by the trial court, provided there was no legal objection to its admission. The question is, whether Thomas McCarty was, within the meaning of the statute, " a party or person interested in the event " of the action, or whether he was " examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest." (Code Civ. Pro. § 829.)

Since section 399 of the Code of Procedure was changed into section 829 of the Code of Civil Procedure, the fact that the witness is a party on the record is no longer controlling. ( *Whitehead* v. *Smith*, 81 N. Y. 151.) Since that change was made a witness whose interest in the result is adverse to that of the party calling him, does not testify in his own behalf or interest. ( *Carpenter* v. *Soule*, 88 N. Y. 251, 257.) An interest in the question is not enough to disqualify, as that is not an interest in the event. Unless the witness will gain or lose by the event, either directly, as in money, or indirectly, because the record could be used as evidence for or against him, he is not disqualified. (*Eisenlord* v. *Clum*, 126 N. Y. 552, 556; *Van Nuys* v. *Terhune*, 3 Johns. Cas. 82; *Jackson ex dem* v. *Brooks*, 8 Wend. 426, 431.) In the case last cited, it was held that a tenant by the curtesy is a competent witness for the plaintiff in an action of ejectment brought by the heir at law. The court said: " Vrooman was introduced as a witness, but was objected to on the ground of interest, having married one of the daughters of Hermanus Bradt, and his children by her being some of the lessors of the plaintiff. He was entitled to an estate for life in the property of his wife, and so long as he lives his children cannot recover the property in an action of ejectment. They have no right of pos-

session until the death of their father. If the plaintiff recovers in this suit, the verdict cannot be evidence for the witness in any suit which he may bring; his interest is, therefore, an interest in the question, and not in the event of the suit. It is like the interest of a widow in an action for her husband's estate, and she is competent. (5 Johns. R. 158; 4 Johns. R. 230.) He was, therefore, a competent witness."

It is difficult to see how McCarty's signature to the mortgage added anything to its effect, as, since the acts allowing married women to sell and devise their lands, a husband's right as tenant by the curtesy initiate, as to lands acquired since the passage of those acts, consists simply of a *status*, which is never a vested right and is not separately alienable during coverture, but may be modified or annulled at any time before it becomes consummate by the death of the wife. (*Thurber* v. *Townsend*, 22 N. Y. 517; *Staples* v. *Brown*, 95 Mass. 64; *Williams* v. *Baker*, 71 Pa. St. 476; 1 Kerr on Real Property, §§ 780, 831; Gerard's Titles to Real Estate [4th ed.], 79, 159.) While merely initiate, it is not an estate, but a simple possibility or expectancy like that of an heir apparent. Either may be destroyed at will by the owner of the fee. As it is not coupled with any interest in the property, it cannot be made the subject of a mortgage or transfer. "It is common learning in the law that a man cannot grant or charge that which he hath not." (Perkins, tit. Grant, § 65.) Like "the next cast of a fisherman's net," it involves a possibility but no actual or potential interest. (1 Thomas on Mortgages, § 136.) While equity may enforce a contract expressly intended by the parties to apply to after-acquired property, that principle does not apply to a husband, who simply unites with his wife, the owner of the fee, in a deed or mortgage. We think, therefore, that Mr. McCarty was not disqualified as a witness because he was tenant by the curtesy.

His pecuniary interest as co-obligee on the bond was adverse to that of the parties calling him, as that interest would have been promoted by making his wife and her property liable, so that the entire burden would not fall upon him. For the

same reason his interest as administrator was adverse to that of his children. While he was entitled to one-third of the net assets, he was liable for the entire amount of the bond, so that whatever was paid from the property of his wife, whether real or personal, lessened by so much his own liability. Although a party to the action, he had served no answer, either personally or as administrator, and he was, therefore, liable to have judgment pass against him in both capacities for the entire debt. Whatever the result might be of the issue on trial, it could add nothing to his responsibility. The tendency of the evidence excluded was not to augment, but to lessen his liability, for whatever he swore off of his wife, he swore on to himself. *He was not a party to the issue and the parties* calling him did not derive their title to the property in controversy from him, but by direct inheritance from his wife. His pecuniary interest, as distinguished from his interest through sympathy for his children, would have been promoted by the success of the plaintiff, rather than by its defeat.

We think, therefore, that he was a competent witness and that the exclusion of his testimony calls for a reversal of the judgment and a new trial.

All concur, except BARTLETT, J., who concurs as to certificate of acknowledgment, but dissents as to competency of McCarty's evidence.

Judgment reversed. _____