## MACE v. MACE et al.

(Supreme Court, Appellate Division, Fourth Department. December 18, 1897.)

1. BASTARDS—PRESUMPTION OF LEGITIMACY.

Where there is testimony by one witness that it was understood in the family that A. was the daughter of a deceased father "by another woman, or by a prior wife," and evidence that one of A.'s half-brothers said of himself and his brothers and sister, "We are all bastards; we don't deny that," and there is no evidence of a marriage between the deceased and either of his supposed wives, the evidence of illegitimacy of the younger children does not sufficiently overcome the presumption of legitimacy, so that a finding of legitimacy by the trial court should be overthrown as against the weight of evidence.

2. JUDGMENT—EVIDENCE OF SERVICE.

A judgment in ejectment, founded upon an affidavit of personal service standing for more than 40 years, is conclusive upon those upon whom it purports to have been personally served, and cannot be overthrown by the uncorroborated testimony of a defendant that the summons was not served upon him.

3. EJECTMENT—CONSTRUCTION OF JUDGMENT.

A default judgment in ejectment, entered in 1852, when 2 Rev. St. p. 308, § 33, provided that in cases of default the judgment should be that the plaintiff recover the premises according to the description in the declaration, "adjudged that the plaintiff recover and have possession of the lands described in the complaint in this action, and that the defendants surrender and deliver up the possession thereof." The complaint alleged that the plaintiff was the owner in fee, and there was no claim of leasehold interest upon either side. Held, that the judgment that the defendants had no right of possession, following the form which has been prescribed by all the form books, and followed for more than 50 years, was equivalent to a judgment that they had no title.

**4. RES JUDICATA.**

A judgment in ejectment is not conclusive against defendants who were not served with process.

**5. TENANCY IN COMMON—PURCHASE OF OUTSTANDING TITLE.**

The purchase of the title of a successful plaintiff in ejectment by a joint defendant, against whom the judgment is conclusive, is not a purchase of an outstanding claim by a tenant in common, which will inure to the benefit of those of the defendants against whom the judgment in ejectment is not conclusive.

**6. SAME—PURCHASE FROM CO-TENANT.**

A co-tenant may purchase the share of any of his co-tenants, and hold it for his own benefit.

**7. EJECTMENT—EVIDENCE OF TITLE.**

Appellants' grandfather died seised of land in 1849, and in 1851 A. began ejectment against the widow and children (six in number), claiming that she (A.) was the only legitimate child and sole heir of the deceased. The widow and two sons (one of them appellants' father) appeared, but never answered, and judgment was taken by default. Appellants' father purchased A.'s interest in 1852, after judgment, and went into possession, his mother living with him. In 1863 he quitclaimed to her on going to war, and in 1887, after he was married, and had children, she reconveyed to him. Though the other children were under age at the time of the ejectment suit, they all knew of it, and of the subsequent conveyances between their mother and brother. In 1889 one of the children sued appellants' father to have the deed from his mother to him in 1887 set aside on the ground of incompetency, claiming that the mother was owner in fee. All the other children knew of it, and were all witnesses in the suit. In 1895 appellants' father died, and his brothers and sisters brought partition, claiming each one-sixth. *Held,* that the evidence was convincing that in some way those of the heirs who were not concluded by the judgment in ejectment in 1852 had relinquished their claim to the premises.

Ward, J., dissenting.

Appeal from special term, Yates county.

Action to partition land, brought by James R. Mace against Lydia Mace and others. From an interlocutory judgment awarding partition, Lydia Mace and others, infants, by their guardian ad litem, appeal. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Monroe Wheeler, for appellants.

C. W. Kimball, for respondents.

FOLLETT, J. This action to partition $46\frac{1}{4}$ acres of land in the town of Jerusalem, in the county of Yates, was begun November 25, 1895. It is conceded that in October, 1849, John Mace died intestate, seised in fee of the $46\frac{1}{4}$ acres of land, and of other lands. The principal question in issue is, who owns the legal title to the $46\frac{1}{4}$ acres of land? The plaintiff and the defendants who are respondents assert that the only heirs of John Mace were Hiram G. Mace, John C. Mace, James R. Mace, Jerome B. Mace, Leroy Mace, sons, and Caroline J. Mace, daughter, the wife of Jacob C. Barber; and that Hiram G. Mace, James R. Mace, Jerome B. Mace, Leroy Mace, and Caroline J. Barber, as heirs of their father, each own an undivided one-sixth, and that the appellants, as heirs of John C. Mace, together own an undivided one-sixth, or one-eighteenth each, of the $46\frac{1}{4}$ acres. The appellants, to support their title, assert that the six children

of John Mace above named were not his legitimate children, but that he left a legitimate daughter, Arabella E. Wisewell, the wife of John M. Wisewell, the fruit of a legal marriage, who was the sole heir of John Mace; and that she recovered the 46¼ acres by a judgment in ejectment, entered June 5, 1852, from whom the father of the appellants derived his title. In support of the issue of illegitimacy a witness called by the plaintiff testified on cross-examination that it was understood in the family that Arabella E. Wisewell was the daughter of John Mace "by another woman, or by a prior wife." A witness called by the appellants testified that in 1895 he heard James R. Mace, the plaintiff in this action, say, referring to himself, his brothers, and sister, "We are all bastards. We don't deny that." James R. Mace was afterwards sworn as a witness, and did not deny making this statement. It is a singular fact that, notwithstanding this evidence, and the allegation in the answer, the respondents gave no evidence tending to show that their father and mother were married, or that they were reputed to be husband and wife, and were received as such, among their neighbors and acquaintances. Neither did the appellants give any evidence of the marriage of John Mace to the mother of Arabella E. Wisewell, nor is her maiden name disclosed. The legal, though rebuttable, presumption is that the six children of John Mace and Lydia were legitimate, and the inferential finding of the trial court that they were should not be overthrown as against the weight of evidence.

The appellants, however, assert that, though the foregoing issue was well found,—which they dispute,—they have established a legal title to the land under the judgment in ejectment and the three deeds hereinafter described, and by adverse possession of the land for 43 years, by themselves, by their father, and by their grandmother, under these deeds, which issue will now be considered. In 1831 John Mace and Lydia (her maiden name not given) were living together, and in January of that year Hiram G. Mace, their eldest child, was born; in March, 1832, John C. Mace, their second child, was born; in July, 1843, Leroy Mace was born; in 1846, Jerome B. Mace was born; and in 1849, Caroline J. Barber, their youngest child, was born, a few months before her father's death, and became of full age in 1870. The year of the birth of James R. Mace is not stated. John Mace and Lydia lived together, apparently as husband and wife, until October, 1849, when he died intestate. She died November 26, 1890, without having her dower assigned in any of the land of which he died seised. In November, 1851, Arabella E. Wisewell and John M. Wisewell, her husband, began an action of ejectment in the supreme court against Lydia Mace, Hiram G. Mace, and John C. Mace to recover the 46¼ acres of land and an undivided half of 92 acres 1 rood and 37 perches of land. November 22, 1851, the summons was personally served on Lydia Mace and John C. Mace, and February 23, 1852, it was personally served on Hiram G. Mace, as appears by due proofs of service contained in the judgment roll. Hiram G. Mace testified that he was then of full age. It is alleged in the complaint "that the said Arabella E. Wisewell is the

owner in fee and is entitled to the possession of all that certain piece or parcel of land situate, lying, and being in the town of Jerusalem, in the county of Yates" (describing the 46¼ acres). It was also alleged that she was the owner and entitled to the possession of an undivided half of 92 acres 1 rood and 37 perches of land of which John Mace died seised, which was particularly described in the complaint. That action was brought by Reynolds & Brundage, of Hornellsville, N. Y., as attorneys for the plaintiff. When it was begun, John C. Mace was but 19 years of age (he was born in March, 1832), and, he having neglected to procure a guardian ad litem to be appointed, upon the application of the plaintiff, Augustus Van Buren, an attorney of Penn Yan, was appointed his guardian ad litem, and afterwards appeared in the action as the attorney for all the defendants, but failed to answer or demur. On the 5th of June, 1852, a judgment was entered in the action, whereby it was "adjudged that the plaintiff, Arabella E. Wisewell, recover and have possession of the lands described in the complaint in this action, and that the defendants surrender and deliver up the possession thereof." This judgment is conclusive against Hiram G. Mace that he had no title to the 46¼ acres, June 5, 1852. 2 Rev. St. p. 309, § 38; Code Civ. Proc. § 1526. He does not claim that he has acquired title since the entry of that judgment, but rests his right upon the title alleged to have descended from his father to him, who died in October, 1849. When this judgment was entered, the Revised Statutes prescribed the practice in an action of ejectment, and the effect of a judgment in such an action. By subdivision 7 of section 30, 2 Rev. St. p. 307, it was provided:

"The verdict shall also specify the estate which shall have been established on the trial, by the plaintiff in whose favor it shall be rendered, whether such estate be in fee, for his own life, or for the life of another, stating such lives, or whether it be a term for years, and specifying the duration of such term."

There was no verdict in the action, but the judgment was rendered by default. By section 33, 2 Rev. St. p. 308, it was provided:

"Sec. 33. In cases where no other provision is made, the judgment in the action, if the plaintiff prevail, shall be, that the plaintiff recover the possession of the premises, according to the verdict of the jury, if there was such verdict; or if the judgment be by default, according to the description thereof in the declaration, with costs to be taxed."

It is suggested, though the question was not argued, that the judgment in ejectment is defective in form, because it does not adjudge that the defendants had no title, but simply that they then were not entitled to possession of the land. This position is untenable. It is distinctly alleged in the complaint that the plaintiff was the owner in fee, and the rule is that a judgment, unless there is some grave defect in it, should be construed to follow and conclude the parties according to the allegations in the pleadings. If the defendants in the ejectment action were the owners of the premises, they would have been entitled to the possession thereof, unless a lease from them had been established; and there is no such claim. Hiram G. Mace testified on the trial in the case at bar, and he made no claim that he then or ever had any title to the premises except as owner, by de-

scent from his father.    There is no claim that the plaintiff in the ejectment action recovered as lessee.    The judgment, a paragraph from which is quoted above, refers to the complaint, and adjudges that the plaintiff have possession of the lands described therein. The plaintiff's attorneys, in entering the judgment, followed the practice which prevailed under the Revised Statutes.    In Adams, Ej. 496, a form for a judgment in ejectment on default is given, which reads that the plaintiff "ought to recover against the defendant the possession of the premises in the said declaration of the plaintiff described."    The forms in the volume were prepared by John L. Tillinghast, and subsequently revised by Judge Thomas W. Clerke, by Judge William Hogan, and by Mr. Thomas W. Waterman.    Mr. Alexander M. Burrill, in his learned work on Practice, for many years the standard work on that subject, under the Revised Statutes, prescribed, at page 528 of volume 3, the form of a judgment in ejectment by default, and he uses the same language given in Adams' work.    2 Till. & S. Prac. 702, gives a form for a judgment in ejectment on a verdict.    It reads:    It is "adjudged that the plaintiff recover possession of the real property described in the verdict."    The form given by 3 Tiff. & S. Prac. 206, is "that the plaintiff recover possession of the real property described in the complaint"; and Mr. Wait, in his work on Practice (volume 3, p. 623), gives the same form. In no case or work on practice have I found it laid down that a judgment in ejectment, referring to the complaint for a description of the lands recovered, or of the interest recovered, was insufficient, unless the plaintiff failed to recover all the land described in the complaint, or the interest therein alleged in the complaint.    Form books are not very high authority, but, when the same forms have been prescribed and generally followed for more than 50 years, they are of some authority.

This question has been decided by the court of last resort in this state.    Cagger v. Lansing, 4 Hun, 812, affirmed 64 N. Y. 417.    In 1864, Van Rensselaer recovered a judgment in ejectment against Lansing.    In the complaint it was alleged that the plaintiff was the owner in fee, and the defendant pleaded the general issue.    The action was tried before a referee, who found the facts substantially as alleged in the complaint, and, as a conclusion of law, that the plaintiff was "entitled to recover and have possession of the premises."    The judgment entered followed the language of the conclusion of law, and and in describing it the court said (64 N. Y. 428): "In the judgment entered upon his report there is no mention made of the title of the plaintiff, more than there is in the judgment in this action.    In the report of the referee there is no specific expression that the plaintiff has a title in fee for life or for years."    Subsequently Mrs. Cagger succeeded to the title of Van Rensselaer, and brought an action of ejectment to recover the same land, and on the trial the judgment in the first action was received in evidence.    It was contended then, as now, that the judgment was not evidence of title, but simply evidence of Van Rensselaer's right to possession.    Nevertheless it was held that the first judgment was conclusive evidence against the defend-

ant on the question of title.   Undoubtedly, it is by far the better practice under the present Code to describe correctly the land and the interest therein recovered, because the judgment is required to be recorded, and the evidence of what was recovered is thus preserved. This judgment is conclusive evidence that Lydia Mace, Hiram G. Mace, and John C. Mace had no title or right of possession of the land June 5, 1852, and that somehow—no matter how—Arabella E. Wisewell had acquired the title.   Title is not transferred from the unsuccessful to the successful party by a judgment in ejectment, which is simply conclusive evidence that when the action was begun the unsuccessful party had no title or right of possession, but that the successful party had title, and the right of possession.   As was held by the learned trial justice before whom the evidence was taken, the judgment was not evidence that James R. Mace, Jerome B. Mace, Leroy Mace, and Caroline J. Barber had no title to or right of possession of the land in dispute, because they were not parties to that action.   Hiram G. Mace testified on the trial that the summons in the ejectment action was not served on him, but he admits that he had known of the judgment for many years, and of the subsequent conveyances, and made no attempt to have the judgment or conveyances set aside.   In Bank v. McCarty, 149 N. Y. 71, 43 N. E. 427, it was held that a certificate of acknowledgment of a mortgage which had been on record for 10 years should not be overthrown on the unsupported testimony of an interested witness, nor upon a mere preponderance of evidence, but only on proof so clear and convincing as to amount to a moral certainty.   In McKechnie v. McKechnie, 3 App. Div. 91, 39 N. Y. Supp. 402, it was held that an affidavit, which had been on record for more than 30 years, of the service of a notice of sale in a statutory foreclosure, could not be overthrown by the evidence of the person upon whom it was served,—an interested party. The judge who decided this case made no finding upon this question, but in his opinion he assumes that the summons was personally served.   The affidavit of personal service of the summons on Hiram G. Mace has been a matter of record for more than 40 years, and the effect of it was not overcome by his uncorroborated testimony.

It is argued that the subsequent purchase by John C. Mace of the title of Arabella E. Wisewell was a purchase by one tenant in common of an outstanding claim which inured to the benefit of his co-tenants. This contention cannot be sustained, for two reasons:   First. When the premises were subsequently purchased by John C. Mace he was not a tenant in common with his brothers and sister.   He had no title or interest in the premises as declared by the judgment, and consequently, as before stated, was not a tenant in common.   Second. In case a tenant in common purchases the share of one of his co-tenants, it is not the purchase of an outstanding and hostile claim of title against the joint interests of the co-tenants.   The rule is that a co-tenant cannot purchase an outstanding, hostile title against the common title of the co-tenants, and assert it against them, but he may purchase the share of any one of his co-tenants, and hold it for his own benefit.   Freem. Co-ten. § 154 et seq., and cases cited. July 18, 1852, Arabella E. Wisewell and John M. Wisewell, her hus-

band, conveyed the 46¼ acres, and also the undivided half of 92 acres, 1 rood, and 37 perches, of land recovered in the action of ejectment to John C. Mace by a quitclaim deed reciting a consideration of $225, and recorded April 8, 1858. He held under this conveyance, residing on the premises with his mother, until March 2, 1863, when, having enlisted in the army, he conveyed the 46¼ acres to Lydia Mace, his mother, by a quitclaim deed reciting the consideration that he was to have a home during life with his mother, which deed was recorded March 9, 1863. Upon his return from the army, he continued to reside on the premises with his mother, and at some time was married (the date not appearing) to Elizabeth A. Lamphier, and their children, the appellants, were born on the premises. In the years 1884, 1885, and 1886 the premises were assessed to Lydia Mace, and the taxes were paid; and the presumption is that taxes are paid by persons against whom they are assessed. February 24, 1887, Lydia Mace conveyed to John C. Mace the 46¼ acres and two other parcels, containing 25½ acres, on the opposite side of the highway, by a quitclaim deed reciting a consideration of one dollar, natural love and affection, and of her proper support and care during life, which deed was recorded March 16, 1887. It appears in the case that March 14, 1887, John C. Mace gave his mother a life lease of the premises to secure her support, which was recorded, but is not contained in the case. July 13, 1895, John C. Mace died intestate, leaving Lydia Mace, Robert A. Mace, and Florence E. Mace, his children and only heirs, the appellants herein, and Elizabeth A. Mace, his widow, the mother of said children. From 1887 to 1894, both years inclusive, the land in dispute was assessed to John C. Mace, and the taxes were paid by him, as his widow testifies. In 1895 his widow paid the taxes. Hiram G. Mace testified that he paid the taxes during some of the years since the death of his father, but he was unable to state the years, or the amounts paid. During all these years it appears that John C. Mace had control of this land, and occupied it for his own benefit, supporting his mother. In 1893, John C. Mace was stricken with paralysis, and Hiram G. Mace, who was then in the West, was telegraphed to return. From that attack John C. Mace never recovered, and died, as before stated, July 13, 1895. During the years 1894 and 1895, Hiram G. Mace and James R. Mace worked on the farm under a contract with John C. Mace, by which they were to have one-third and he two-thirds of the avails for the year 1894, and for 1895 they were to have one-half and he one-half of the avails. This certainly is inconsistent with the idea that James R. and Hiram G. Mace then claimed that they were co-tenants with John C. Mace, and entitled to a portion of the products of the land. The only control exercised by any one of the brothers over this place was during the years 1894 and 1895, when John C. Mace was sick, and unable to manage it. The evidence shows that some of the brothers from time to time returned to the old homestead, and occasionally did some work on it; but they all admit that during all these years they never received or claimed the products of the farm, or demanded any rent of John C. Mace. Witnesses were called, who testified that they were hired to work on the farm, and were paid by John C. Mace. It

is true that Hiram G. Mace testified that he paid persons for work on the buildings; but, though those persons were living, they were not called as witnesses. The testimony tending to show that any of the brothers had worked on the farm, or expended anything on account of it, was entirely given by themselves, who are deeply interested in this action. Again, a few years after the marriage of John C. Mace, Lydia Mace, the mother, went to reside with Caroline J. Barber, her daughter. In 1889, Lydia Mace, while residing with her daughter, was adjudged incompetent to manage herself or her affairs, and her daughter was appointed the committee of her person and estate. February 23, 1889, Caroline J. Barber, as such committee, brought an action in the supreme court against John C. Mace and Elizabeth A. Mace, his wife, to set aside the deed from Lydia Mace to John C. Mace, on the ground that she was incompetent to make the conveyance. She alleged in her complaint that for many years prior to the deed of February 24, 1887, Lydia Mace had been the owner and in possession of the premises, and that John C. Mace had been in possession of them since the date of the deed. A judgment was demanded that the deed be set aside as void, and canceled of record, or that John C. Mace and his wife be compelled to convey said premises to Lydia Mace. September 2, 1889, a judgment was entered dismissing this action, with costs in favor of the defendants.

It will be observed that in this complaint it is alleged, not that these respondents were co-owners of the premises with John C. Mace, but that the mother was the owner of the premises. Hiram G. Mace testified on the trial of the case at bar that he and his brothers knew of this action, and "I was the author of the suit. I don't know that I read the complaint, and knew what it was." He also testified that he objected to this suit, tried to prevent it, and had more to do with getting it put through than his brother John had. Jerome B. Mace testified that he knew of that suit, was called as a witness, and thought that his brothers were called. I am aware of the rule that a co-tenant is presumed to hold the possession of land for the benefit of the other co-tenants, and that it requires more evidence of adverse possession by a co-tenant against his co-tenants than is ordinarily required of adverse possession in an action between strangers to the title. In the case at bar the evidence, to my mind, is overwhelming that since July 18, 1852, the date of the deed from the Wisewells to John C. Mace, for a period of more than 40 years, he and his mother and these appellants have been in possession of the land, claiming under these deeds in hostility to the respondents. There is no evidence that any one of the respondents has exercised acts of ownership over these premises during all these years. It is true that it was the homestead, and the children occasionally returned to it, and from time to time lived there; but more than 20 years prior to the commencement of this action all except Hiram G. Mace married, and established homes of their own. Hiram G. Mace's interest has been disposed of. All these respondents except Mrs. Caroline J. Barber testified that they have been laboring men, and it appears from the testimony which they gave that they have had no very permanent abiding places, having lived here and there, and at times returned

to the homestead. It seems to me entirely improbable that, if they had an interest in this property as co-tenants, considering their circumstances, they should not have attempted to enforce it before. They do not claim that during all these years they have received any of the products of this land, or that they have demanded or received rent for the use of the land. These facts, and others which might be referred to, convince me that at some time and in some manner these respondents relinquished whatever claim they may have had by reason of being sons of John Mace. It is singular that for more than 40 years they should have failed to assert their claims, and yet, within 4 months after the death of their brother John C. Mace, have brought this action against his widow and infant children to recover five-sixths of this property. I think the finding that the appellants, their father, and their grandmother had not been in possession of this land for more than 20 years, claiming under these conveyances, in hostility to the respondents and to all the world, is against the weight of evidence. I·have less hesitation in coming to this conclusion than I would have had if the case had been decided by the justice who heard the evidence, but, unfortunately for these litigants, the justice before whom the case was tried became disqualified to decide it, and it was decided by a justice who read the evidence taken. He had no better facilities for determining the facts at issue than has this court. At the conclusion of the opinion of the learned justice who decided this case he said:

"The omissions in the testimony on both sides of the controversy are such that we have been compelled to look to some extent between the printed lines of the record for the true history of the case. It is to be regretted that the able jurist before whom the witnesses appeared could not have been afforded the opportunity to illumine the decision of this case with his great learning and wisdom."

It seems to me that in the interest of justice and of these litigants this case should be retried, and decided by a court before which the evidence is given, and that both parties should have an opportunity of supplying the apparent omissions in the testimony.

The judgment should be reversed, and a new trial granted, with costs to the appellants to abide the event. All concur, except WARD, J., dissenting.