(37 Misc. Rep. 140.)

### FRANK et al. v. SCHLOSS.

(Supreme Court, Special Term, New York County. January, 1902.)

CANCELLATION OF MORTGAGE—FRAUD.

    Where, in an action to set aside a bond as fraudulent on the mortgagors' plea that they did not know what they were signing, the testimony is inharmonious, and shows a disregard of the sanctity of an oath on the part of most of the witnesses, and statements of plaintiffs and their witnesses are absolutely disproved by credible witnesses, judgment will be rendered for defendant.

Action by Ike Frank and others against Moses Schloss to set aside a bond and mortgage. Judgment for defendant.

A. B. Schleimer, for plaintiffs.
Lachman & Goldsmith, for defendant.

GREENBAUM, J. The plaintiffs seek to set aside a bond and mortgage covering certain real property upon the ground that their execution was procured by fraud. The defendant denies the material allegations of the complaint, and sets up a counterclaim for the foreclosure of the mortgage. The facts show that on April 4, 1899, the plaintiffs Isaac Frank and Annie Frank (a daughter-in-law) executed a bond and mortgage affecting premises No. 175 Norfolk street for $1,000 to Samuel Frank, a son of the plaintiff Isaac. On July 31, 1900, a new mortgage loan for $23,000 in place of two then existing mortgages, aggregating said sum, having been consummated, it became necessary to satisfy all existing mortgages, including the $1,000 mortgage to Samuel Frank, who had theretofore assigned it, together with the accompanying bond, to the defendant Moses Schloss, for what appears to have been a valuable consideration. Upon the closing of the title to the first mortgage for $23,000 the defendant satisfied the assigned mortgage of $1,000, and a new mortgage for like amount was executed by the plaintiffs, and with a new bond delivered to the defendant. These are the instruments which plaintiffs seek to set aside as fraudulent. To succeed in this suit, it is practically incumbent upon the plaintiffs to establish fraud in the execution of the two successive $1,000 mortgages. The court will not readily invalidate a mortgage upon the plea here interposed, that the mortgagors did not know what they were signing, and it is

necessary for the plaintiffs to sustain the burden of proof by convincing testimony. A solemnly executed instrument under seal will not be set aside upon testimony of a doubtful character. Bank v. McCarty, 149 N. Y. 71, 43 N. E. 427. This cause presents an exceedingly disagreeable controversy between a father, mother, and children on one side, and a son and brother on the other. It exhibits also an appalling disregard of the sanctity of an oath on the part of various members of this inharmonious family. It is the duty of the court, without sympathy, to disregard the reckless testimony given by the different parties, and to ascertain the truth from the attendant circumstances and the probabilities of the case. With these observations, and without attempting to review all the details of the case, I will briefly refer to some of its striking features as illustrative of the reasons that impel me to the conclusion at which I have arrived. The title to these premises was originally taken in the name of Samuel Frank, and subsequently the title was vested in a brother named Hyman Fisher. In April, 1899, a deed was executed by Hyman to the father, Isaac, the daughter-in-law Annie, and the son Samuel, each thus acquiring a one-third undivided interest. Simultaneously with the execution of the deed the original bond and mortgage for $1,000 was signed by Isaac and Annie Frank, and delivered to Samuel Frank. Plaintiffs claim that Samuel procured his father and sister-in-law to sign this mortgage through the collusive aid of his brother Nathan. The latter claimed that he abetted Samuel upon the assurance that no wrong was intended, as Samuel proposed to use the mortgage and his interest in the property as a temporary means of bolstering up his weakened financial condition in his business. It appears that Nathan was a young man who could read and write, and that the plaintiffs were ignorant of the English language. Samuel Frank contends that he was interested in the ownership of the property with his father and sister-in-law, and that the deed to the three parties and the mortgage to himself were executed in order to adjust their unequal interests. The instruments were signed and acknowledged before an apparently reputable notary public, known to the plaintiffs and unknown to Samuel. If Samuel intended to perpetrate a fraud it is not probable that he would have gone to a notary friendly to his father, and who would be likely to explain the nature of the papers to be signed. The risk of detection would be great. Besides, it is difficult to believe that the father, who had had experience in real-estate transactions, would not be put upon his inquiry when asked to sign papers in a transaction which called for no papers on his part to sign. The alleged confession of Nathan on the stand as to his part in the conspiracy is not entitled to credence, in view of the inherent improbability of the story, and his peculiar conduct at the time when the Schloss mortgage was executed. Plaintiffs claim that when Schloss procured the new mortgage of $1,000 in place of the original one, which he satisfied, a new conspiracy was hatched by the son Samuel, with a new set of allies. It appears, however, that Samuel had previously brought a partition suit against the plaintiffs in order to secure the share that he claimed in the property, and that this suit

had been amicably settled between the parties. Yet, in the face of this fact, the plaintiffs would have the court believe that they relied upon the assertion of Samuel's attorney, who was present at the time of the closing of the $23,000 loan, in signing the new bond and mortgage for $1,000 that they were signing an affidavit, notwithstanding an affidavit had actually been signed by them, and the further fact that they had brought the educated son, Nathan, with them to read and explain the papers that they were to sign. Nathan contended that he did not read the papers, but relied upon Samuel's attorney, who was confessedly hostile, and this with full knowledge of the fact, as he claims it to be, that his brother Samuel had induced him, as he confessed, to deceive his own father and sister-in-law in procuring their signatures to the original bond and mortgage. The testimony of a number of credible witnesses absolutely disproves many of the statements of the plaintiffs and their witnesses as to the circumstances attending the execution of the instruments in question, and convinces me that no fraud was perpetrated by the defendant. Plaintiffs rely upon their illiteracy for relief. Illiteracy is usually accompanied by the compensating trait of excessive caution. If the plea of illiteracy is to be readily accepted in efforts to invalidate instruments executed with due formality, then would illiteracy and ignorance become potent instruments of injustice when possessed by unscrupulous persons. Judgment for defendant upon the merits, with costs.

Judgment for defendant, with costs.