NORTHWESTERN LOAN & BANKING CO. v. JONASEN et al.

1. Laws 1890, Chap. 86, which by express terms exempts a homestead from all process, levy, or sale, bestows on the owner immunity from a sale thereof for purchase money.

2. In view of Comp. Laws, § 5307, providing that an instrument in writing, which is acknowledged or proved, and duly recorded, is admissible as evidence without further proof, a notary's certificate of acknowledgment to a recorded mortgage is *prima facie* evidence of every necessary recital, and his uncontradicted testimony in relation thereto is entitled to full credit, and hence an unimpugned certificate of acknowledgment, established by the notary's evidence, gave to a mortage the full force of the mortgagor's signature thereto, though it is conceded that she "did not take hold of the pen," and did not "ask any one to sign her name" when it was done by the notary.

(Opinion filed June 26, 1899.)

Appeal from circuit court, Moody county. Hon. J. W. JONES, Judge.

Action in forcible entry and detainer by the Northwestern Loan & Banking Company against Erik Jonasen and others in justice court. Title to land being questioned, the action was

certified to the circuit court.   There was a judgment in favor of defendants, and plaintiff appeals.   Reversed.

The facts are stated in the opinion.

*J. H. Williamson,* (*Aikens & Judge,* of counsel), for appellant.

A mortgage to secure the purchase price of a homestead executed by the fee owner need not be signed by the husband or wife of such owner.   Roby v. Bismarck National Bank, 59 N. W. 721; Christy v. Dyer, 14 Iowa 438; Hopper v. Parkinson, 5 Nev. 233; Amphlett v. Hibbard, 29 Mich. 298; Austin v. Underwood, 37 Ills. 439; Lasson v. Vance, 8 Cal. 271; Carr v. Caldwell, 10 Cal. 380; Nichols v. Overacker, 16 Kans. 54; Andrews v. Alcorn, 13 Kans. 351.

The evidence was insufficient to sustain the finding of the jury that Mrs. Jonasen did not execute the mortgage.   It is against public policy to impeach evidences of title by the sole and uncorroborated testimony of interested parties.   Canal Co. v. Russell, 68 Ill. 426; Lickmon Exr. etc. v. Harding, 65 Ill. 505; Graham v. Anderson, 42 *Id.* 514; Kerr v. Russell, 69 *Id.* 669; Monroe v. Poorman, 62 *Id.* 526; Marston v. Brittenham, 76 *Id.* 611-614.   Russell v. Baptist Union, 73 Ill. 337; Baldwin v. Bornheimer, 48 Cal. 433; DeArnaz v. Escandom, 59 Cal. 486; Young v. Duvall, 109 U. S. 573; Smith v. McGuire, 67 Ala. 34; Camp. v. Carpenter, 52 Mich. 375; Johnson v. Van-Velsor, 43 Mich. 208-219.

Mrs. Jonasen does not deny that she acknowledged the execution of the mortgage to the notary.   This act would amount to a ratification of the notary's act in affixing her name thereto.   Jansen v. Cahill, 22 Cal. 563; Videau v. Griffin 21 Cal. 389; Frost v. Deering, 21 Me. 156; Burns v. Lynde, 6

Allen 309; Goodell v. Bates, 14 R. I. 65; Pierce v. Hakes, 23 Pa. St. 231; Ins. Co. v. Brown, 30 N. J. Eq. 193.

*George Rice*, for respondents.

FULLER, J.   Title to land being questioned, this action of forcible entry and detainer was certified from a justice of the peace to the circuit court, where the defendants obtained judgment, and plaintiff appeals.

That the statutory notice to quit was given, and that the respondents remained in possession after the execution and delivery of a deed to appellant, based upon regular mortgage foreclosure prooceedings under a power of sale, appears upon the face of the record, and the only matter of fact in dispute is whether respondent Marsta Jonasen ever joined in the execution of the mortgage given by her husband, Erik Jonasen, upon the homestead, to secure the payment of a portion of the purchase money.   Though insisting that the evidence upon the point is wholly insufficient to sustain the verdict, it is urged by counsel for appellant that a mortgage executed by the fee owner of a homestead to secure the purchase price need not be signed by the husband or wife of such owner, and that the court erred in given the following instruction:   "You are to take into consideration all the facts in this case, and determine whether or not the signature of Marsta Jonasen was placed there with her knowledge and consent.   If it was, then your verdict should be in favor of the plaintiff.   If it was not, your verdict should be for the defendants."   In this state "a conveyance or incumbrance by the owner of such homstead shall be of no validity unless the husband and wife, if the owner is married, and both husband and wife are residents of the state,

concur in and sign the same joint instrument." Comp. Laws, § 2451. Although Section 2452 of the Comp. Laws subjects the homestead to the lien of a mechanic, and Section 2453 provides that it "may be sold for any debt created for the purchase thereof," Chapter 86 of the Laws of 1890, by express terms absolutely exempts the homestead therein defined and limited from all process, levy, or sale. In Fallihee v. Whittmayer, 9 S. D. 479, 60 N. W. 642, it was decided that by this act mechanics and material men were deprived of the right to a lien against the homestead; and in the performance of the duty enjoined by Section 4 of Article 21 of the state constitution, requiring the enactment of a wholesome law defining, limiting, and exempting the homestead from forced sale, it seems very clear from the language employed that the legislature of 1890 intended to bestow upon every owner of a homestead absolute immunity from a sale thereof in satisfaction of debts, even though contracted for the purchase price. The mortgagor being the fee-simple owner of the premises impressed with the character of a homstead, and the mortgagee's interest no more than a lien in the nature of a chattel, there can be no hypothecation unless the purported mortgage was concurred in and signed by both the husband and wife. Comp. Laws, § 2451, as amended by Chapters 76, 77, Laws 1891.

We come now to the main contention. Respondent Marsta Jonasen, being unable to write, it appears that her name was written upon the mortgage by another, and that she signed by making her mark in the presence of two attesting witnesses, and in the usual form acknowledged the execution of the instrument before a notary public. To the point presented by a denial that she ever executed the mortgage, C. B. Kennedy,

president of appellant corporation, testified concerning the note and mortgage as follows: "I saw Erik Jonasen and Marsta Jonasen sign that note and mortgage. Erik Jonasen signed the note and mortgage himself. Marsta Jonasen did not sign her own name to the note and mortgage. John L. Jones signed her name to the note and mortgage for her. I heard her make that request. I saw her make her mark on the note and mortgage. It was done by her taking hold of the pen with Mr. Jones. Mr. Jones had hold of the pen, too. That note and mortgage was delivered to plaintiff after its execution * * * J. L. Jones read over those papers. He would read a clause, and then Mr. Jonasen would talk in Norwegian to her, and explain it, and talk it over. I was in the room at the time, talking frequently myself with them. * * * I said a little while ago that Mrs. Jonasen asked Mr. Jones to write her name on that mortgage. She said, 'I can't write,' or words to that effect. 'You write it.' She said that in broken English, but enough so I could understand it. She did not talk very much English. She talks a little English. She spoke in English there that day. That is about the extent of it though, that I have repeated. Erik Jonasen signed them first. She held the pen when she made her mark. She held on the end of it, and he held it in his hand. I think she kept hold of it while he made all the marks. There were three mortgages and three notes signed at that time." The following is the material part of the testimony of J. L. Jones: "I saw Erik Jonasen and Mrs. Jonasen sign Exhibits F and G. Erik Jonasen signed them himself. Mrs. Jonasen did not sign them herself, I wrote her name at her request. I witnessed the mark on these instruments. I am the J. L. Jones who took the acknowledgement to

this mortgage. I was a notary public at the time.  *  *  *
Mrs. Jonasen simply gave me to understand she could not write
herself, and asked me to write her name for her. That was
immediately after Erik Jonasen had signed them. I offered her
the pen, and she refused it, shook her head, and could not
write. And asked me to write. After I had written her name
(or at the time) she took hold of the pen, and made that
mark, in each place, in every instance. I had hold of the
pen with her. She had hold of the tip of the pen stock.
Erik Jonasen and Mrs. Jonasen afterwards acknowledged
the execution of those papers to be their free act and
deed." Cross-examination: "Mr. Jonasen signed those pa-
pers first. I read it over before either of them signed.
After he signed, I offered her the pen, and then she gave me to
understand she could not write. She shook her head, and said
in very broken English 'No write,' or 'Cannot write.' When
her husband interpreted this mortgage to her I knew enough
Norwegian to know he was interpreting it. I could tell some-
thing about what he was saying. I hear a great deal of Nor-
wegian in my office every day, I don't talk it. I understand
quite a good deal of it. After they had signed the mortgage, I
asked them if they acknowledged it, and they said they did.
Mr. Kennedy was present during the time these papers were
being made out." To overcome the foregoing evidence, Erik
Jonasen did no more than to swear that his wife never signed
the papers, and her testimony relating to the matter is as fol-
lows: "I am Erik Jonasen's wife. I am living with him on a
farm near Colman. I went with him to Madison, about three
or four years ago. I was there when he was signing some
papers. I did not go there with him more than once when he

was signing papers.   *   *   *   I did not take a pen, and sign my name to some papers there that day.   I cannot write.   I did not ask any one to sign my name to some papers there that day. I saw Mr. Jones over there. I did not, when he had the pen in his hand, go up and take hold of the pen.  I cannot understand and cannot talk the English language.   No one read any papers to me in Norwegian there that day."  Upon the theory that the certificate of the officer taking the acknowledgment cannot be impeached by the uncorroborated testimony of interested parties, it is urged that the evidence is insufficient to sustain the finding of the jury that Marsta Jonasen did not execute the mortgage, and that the motion to direct a verdict in favor of appellant ought to have been sustained.   The view we shall take of the quoted instruction given to the jury, and to which our attention is called by an assignment of error, renders a direct determination of the exact point unnecessary. While an unrecorded mortgage is valid as between the parties and those having notice thereof, the statute requires that it must be acknowledged in order to be recorded, and when acknowledged and recorded its admission in evidence is expressly authorized without any further proof.   Comp. Laws, §§ 3269, 3297, 5307.   Thus the statutory injunction emanating from a wise consideration of public policy, and based upon the presumption that a public officer has properly performed his official duty, makes the recitals of his certificate, written substantially in the form provided by Section 3288 of the Compiled Laws, "evidence without further proof" that the person named therein and in the instrument not only executed, but acknowledged, the execution of such instrument.   Though Mrs. Jonasen, who could not write, denies that she asked any one to sign her

name, or had the pen in her hand when her mark was made, it is undisputed that she went there with her husband for the purpose of transacting the business, and, according to the recitals of his certificate, was to the notary "well known to be the person who is described in and who executed the within and foregoing mortgage, and acknowledged the same to be her free act and deed, for the purposes therein mentioned." The signature of a mortgagor unable to write, made in his immediate presence by another, with his intelligent acquiescence, is as much his act as though he held the pen. 9 Am. & Eng. Enc. Law (2d Ed.) 144, and numerous cases there collated. It seems to be well settled that power to sign a deed in the presence of the grantor may be delegated by parol, and, if signed without authority, subsequent delivery and acknowledgment constitute a sufficient ratification or adoption. Speckels v. Sax, 1 E. D. Smith, 253; Kerr v. Russell, 18 Am. Rep. 634. In Nye v. Lowry, 82 Ind. 316, the court say: "In our opinion, the signature of the grantor in a deed written by another at his request, or, though written without his knowledge, if adopted by him as his own, has the same validity as if written by his own hand; indeed, within the meaning of the law, it becomes his proper handwriting, and the deed so signed, is of the same validity as if written by his own hand and the deed so signed, acknowledged, and delivered, if subject to no other vice, is in all respects effective." In Bartlett v. Drake, 100 Mass. 174, the court held that "A person whose name was subscribed to a deed by his wife in his absence recognizes and adopts the signature as his own by acknowledging the deed before a magistrate." "If one acknowledges and delivers a deed to which his name has been affixed by the grantee, the deed is valid. The acknowledg-

ment and delivery are acts of recognition and adoption so distinct and and emphatic that the grantor will not be allowed to deny that the signature is his. The deed is not sustained on the ground of agency or ratification, but of adoption." Clough v. Clough, 73 Me. 487. The evidence was conflicting in Johnson v. Van Velsor, 43 Mich 209. 5 N. W. 265, and the court treated the proposition as follows: "The case does not exclude argument that Mrs. Van Velsor's name was written by her own hand, but it is unnecessary to investigate that question, because there is another view which is more acceptable. So far as the effect is concerned, it is of no importance whether she held the pen or whether her husband held it, and certainly it was held by one or the other. If the act of penning her name had her free and complete assent, or her free and complete acceptance, the signature is her signature in substance and effect. And it is fully proved that her name was affixed at the proper time, and the weight of evidence is in favor of the truth of the certificate of her acknowledgment of having executed the mortgage, and against her denial, And if she freely and fully ackowledged the mortgage so signed to be her free act and deed, as the certificate imports, then, whether the physical act of writing was performed by herself or her husband, the signature was completely accepted as her own, and it has the force of her signature." It will be noticed that, in addition to the fact that the acknowledgment stands proved because in no manner assailed, both the notary and one of the attesting witnesses having sworn in detail as to all the particulars of the execution, acknowledgment, and delivery of the mortgage by Marsta Jonasen, the burden was upon respondents to countervail such proof by competent evidence to the effect that she

neither executed nor acknowledged the same. The rule governing all such cases goes at least to the extent of holding that a certificate of acknowledgment cannot be impeached by evidence of a doubtful character, nor upon a bare preponderance of evidence, but only on proof so clear and convincing as to amount to a moral certainty. In concluding an opinion involving the question, Mr. Justice HARLAN, speaking for the supreme court of the United States, says: "The mischiefs that would ensue from a different rule could not well be overstated. The cases of hardship on married women that might occur under the operation of such a rule are of less consequence than the general insecurity in the titles to real estate which would inevitably follow from one less rigorous. It is sufficient for the disposition of this case to say that, even upon the assumption that the certificate is only *prima facie* evidence of the facts stated in it, the proof is not of that clear, complete, and satisfactory character which must be required to impeach the official statements of the officer who certified Mrs. Young's acknowledgment of the deed in question." Young v. Duvall, 109 U. S. 573, 3 Sup. Ct. 414.

To indicate the nature of proof required and the extent to which an assailant must go in order to defeat a certificate of acknowledgment, the New York court of appeals in a recent case quotes the following expressions employed by courts and elementary writers: It must be "clear, cogent, and convincing" (Pierce v. Feagans, 39 Fed, 587, 592); "clear, convincing, and conclusive, reaching a high degree of certainty, leaving upon the mind no fair, just doubts" (Smith v. McGuire, 67 Ala. 34); "so full and satisfactory as to convince the mind that the certificate is false or forged" (Griffin v. Griffin,

125 Ill. 431. 436, 17 N. E. 785); "it should, by its completeness
and reliable character, fully and clearly satisfy the court that
the certificate is untrue and fraudulent" (Marston v. Britten-
ham, 76 Ill. 611); "clear and conclusive, excluding every reas-
onable doubt" (Strauch v. Hathaway, 101 Ill. 11); "so clear,
strong, and convincing as to present no loophole of escape
from its power" (Dock Co. v. Russell, 68 Ill. 426· 438); the
certificate "makes a *prima facie* case; that is the least that can
be claimed for it" (Borland v. Walrath, 53 Iowa, 130); it "is,
of itself, entitled to more weight than the testimony by
which it is attacked," which was that of the two mortgagors
(Bearss v. Ford, 108, Ill. 26, 27); it "ought to be regarded as of as
high a grade of evidence as testimony given under oath" (War-
rick v. Hull, 102 Ill. 280, 283); "whenever the fact is fairly de-
batable, the presumption of law must prevail" (Hughes v.
Coleman, 10 Bush, 246); it "is entitled to great and controlling
weight until overcome by clear and satisfactory proof" (Black-
man v. Hawks, 89 Ill. 512, 514); "no matter what the magis-
trate may have sworn to on the trial, the plaintiffs were enti-
tled to have his official certificate go to the jury" (Heeter v.
Glasgow, 79 Pa. St. 79, 80); "the mere evidence of the party
purporting to have made the acknowledgment cannot overcome
the officers certificate, nor will it be with slight corroboration"
(Russell v. Baptist Theological Union, 73 Ill. 337, 341).    In
Thomas on Mortgages it is said that: "As to the statements of
the fact contained in a certificate of acknowledgment which is
regular in form,—such, for instance, as the fact that the grant-
or appeared, and acknowledged the execution of the instru-
ment,—they can only be impeached for fraud." 1 Thomas,
Mortg. § 500.    Mr. Wharton says that "the true view is that

the certificate of acknowledgment is *prima facie* proof of the facts it contains, if within the officer's range, but is open to rebuttal between the parties by proof of gross, concurrent mistake or fraud." Whart. Ev. § 1052. Mr. Devlin, in his work on Deeds, says that "the certificate, standing by itself, without other proof, is *prima facie* evidence of all that it rightfully contains. While not conclusive, it is entitled to the utmost consideration. * * * We regard it as sufficient proof if, after weighing all the probabilities, the evidence shall clearly and strongly preponderate in favor of the party attacking the acknowledgment. If, however, the probabilities balance each other, the soundest principles of public policy and respect for security of land titles demand that the certificate of acknowledgement should not be set aside." Devl. Deeds, p. 540, § 534. Bank v. McCarthy, 149 N. Y. 71, 43 N. E. 427.

In consideration of the mortgage securing purchase money, a warranty deed was executed and delivered to respondents, under which they continued to occupy and enjoy the premises until by their default every right thereunder was forfeited, and a foreclosure ripened into a sheriff's deed in the hands of appellant. If, after so long a silence, the stability of such deed must depend solely upon the integrity or recollection of one to whose advantage its nullification would redound, title to real estate is, indeed, exceedingly insecure. The impolicy of allowing such frail testimony as respondents in this case introduced to prevail over the direct and corroborated evidence of appellant, and defeat a certificate of acknowledgment that has never been questioned, is too obvious to justify further elucidation. However, in this opinion we go no further than to hold that the certificate, at least as *prima facie* evi-

dence of every necessary recital, and the uncontroverted testimony of the notary with reference thereto. were entitled to full credit; and conceding for the present purpose only that Mrs. Jonasen, as she testified, "did not take hold of the pen" or "ask any one to sign her name," her unimpugned acknowledgment gave to the mortgage the full force of her signature. It therefore follows that in charging the jury that the verdict must be for the defendants in any event, unless the signature of Marsta Jonasen was placed upon the mortgage with her knowledge and consent, the trial court erred, and the exception of appellant was well taken. The judgment appealed from is reversed, and a new trial ordered.