#24201-a-DG

**2007 SD 58**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DUANE H. PARSLEY,            Plaintiff and Appellee,

  v.

LUZ DOMINGUEZ PARSLEY,         Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE MAX A. GORS
Judge

* * * *

JAMES E. CARLON
Carlon Law Office
Pierre, South Dakota             Attorney for plaintiff
                                     and appellee.


DAVID W. SIEBRASSE
Attorney at Law
Pierre, South Dakota             Attorney for defendant
                                       and appellant.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 19, 2007

OPINION FILED **06/20/07**

#24201

GILBERTSON, Chief Justice

[¶1.]        Duane Parsley (Duane) commenced a divorce action against Luz Dominguez Parsley a/k/a Luz Gutter Parsley (Luz) in the South Dakota Sixth Judicial Circuit by summons and complaint served, along with notices of admission of service, via first-class United States Mail on September 24, 2004. Luz signed an admission of service on September 28, 2004. She filed no answer. On December 14, 2004, Duane filed an affidavit and application for default judgment. On December 22, 2004, the circuit court entered a decree of divorce incorporating by reference the parties' September 21, 2004 "Stipulation and Agreement."

[¶2.]        On October 28, 2005, Luz filed a motion to vacate the divorce decree. The circuit court heard the matter on November 23, 2005, and December 15, 2005. The circuit court issued its memorandum decision denying Luz's motion on February 23, 2006, which was incorporated by reference into its findings of fact and conclusions of law entered on March 31, 2006 (the incorporated decision). The circuit court's order denying the motion was entered on May 24, 2006. We affirm.

## FACTS AND PROCEDURE

[¶3.]        Duane Parsley was an officer and fighter pilot in the United States Air Force, serving on temporary assignment in Paraguay, when he met Luz Gutter. The two became involved in a relationship. Duane returned to Luke AFB, near Phoenix, Arizona. In 1991, Luz moved to Arizona to continue the relationship with Duane. They were married on December 24, 1992. A son was born to the couple on August 11, 1993.

[¶4.]        Duane was promoted to the rank of Lieutenant Colonel in 1993. Duane also purchased a house in Litchfield, Arizona in 1993. At or around the

-1-

same time he transferred to reserve status and began flying F-16s out of Sioux Falls, South Dakota with the South Dakota Air National Guard. Duane retired from the Air Force in 1997 after more than twenty-five years of service.

[¶5.] In 1996, before retiring, Duane signed an IRS Form 2058, certificate of legal residence, for purposes of designating the state for which income taxes were to be withheld if applicable. Duane designated Draper, South Dakota as his "legal residence/domicile." Though he had maintained a home with Luz and their son in Arizona for several years, Duane had significant ties to South Dakota. As his Air Force career neared its end, Duane prepared to establish a home for the family near Draper.

[¶6.] Duane was born in Rapid City, South Dakota. Until his father, a bomber pilot based at Ellsworth AFB, South Dakota, was transferred, Duane spent much of each summer in Draper working on the family homestead where his grandparents lived. During his time in the Air Force, Duane continued to have friends and relatives in the Draper area and would frequently travel back there to visit. In or around 1996, Duane purchased a house and several lots across the street from his cousin's welding shop in Draper, with intentions of building a new home following his retirement.

[¶7.] After Duane retired from the Air Force, he began working as a pilot for United Airlines. Duane was assigned to Chicago, Illinois for eighteen months, followed by Los Angeles, California. When Duane was not working, he spent his time between Arizona and South Dakota. When traveling between his assignment and South Dakota, Duane would catch "jump seats" into and out of Pierre or Rapid City, South Dakota.

[¶8.]      Duane joined the Draper American Legion in 1997.[1]  His plans of building a home on the lots in Draper changed when he acquired the family homestead outside of town.  Duane established his voter registration in Jones County, South Dakota on August 31, 2000, and soon thereafter began constructing a new home on the family homestead property.  Duane constructed the home himself with occasional help from Luz as well as other family and friends.  Though the home took over four years to complete, it was livable while under construction and Duane began using it as his residence in 2001.

[¶9.]      During the marriage, Duane's Air Force duties required him to travel frequently.  Following his retirement, Duane was away from Arizona much of the time while flying for United Airlines or while establishing the family's new home in South Dakota.  Luz also traveled a considerable amount.  She too would travel to South Dakota, enough so that she eventually registered to vote in the state.  She also made frequent trips to Paraguay to visit relatives and assist in her family's business ventures there.

[¶10.]      During the course of the marriage, Duane and Luz had an increasingly contentious disagreement over money.  Specifically, the two conflicted over Luz's use of funds that Duane was providing her each month and depositing for her in a retirement account.  Over time, Luz sent substantial amounts of money to her family in Paraguay.  The money allegedly was put into various investments and business activities.  However, there was little or no accounting for the use of the

---

1.    By 2004, Duane had served as both vice-commander and commander of the Draper post.

money or income returned from these investment activities. Much of the money was apparently used by her family members to acquire property or establish business ventures exclusive to any interest of Luz.

[¶11.] After several attempts at marriage counseling and reconciliation, the two eventually decided to divorce. Duane's attorney began drawing up a stipulation and agreement in the summer of 2004. The stipulation provided that Duane and Luz would retain their respective individually held property. Luz was to receive any interest she might have in property or assets in Paraguay, as well as approximately $15,000 in a retirement account that Duane had established in her name. At the time, Duane was earning about $100,000 per year aggregate between his Air Force pension and United Airlines salary. The stipulation provided that Duane would pay Luz $1,500 in monthly alimony. It also provided that Duane would have full custody of the couple's son with South Dakota's statutory visitation provisions governing Luz's visitation rights.

[¶12.] In July 2004, Duane and his son flew to Asuncion, Paraguay at Luz's request to meet with her to inspect some investment condominiums. Luz asked Duane if he would like to buy the property. When Duane declined, Luz told him to change the stipulation provision providing for monthly alimony and instead replace it with a lump sum payment of $45,000, so she could purchase the condominiums. Duane agreed and contacted his attorney to make the change.

[¶13.] Duane and Luz signed the revised stipulation on September 21, 2004, (the Stipulation) before a Maricopa County Notary Public. Luz was served with a summons and divorce complaint, along with notices of admission of service, via first-class mail on September 24, 2004. Luz signed an admission of service on

September 28, 2004. Luz did not file an answer and following Duane's affidavit and application for default judgment, the circuit court entered its decree of divorce incorporating the Stipulation. On October 28, 2005, Luz filed a motion to vacate the divorce decree. The circuit court heard the matter on November 23, 2005, and December 15, 2005. The circuit court denied Luz's motion. In so doing, the circuit court stated in its incorporated decision and findings that it found Duane was a credible witness and that Luz, on the other hand, was not credible.

[¶14.]     On appeal, Luz raises five issues:

1.     Whether the circuit court erred in concluding it had subject matter and personal jurisdiction over the parties, enabling it to enter a decree of divorce in South Dakota.
2.     Whether the circuit court erred in finding that Luz was properly served with the summons and complaint, thereby satisfying the statutory notice requirements and conferring to the circuit court jurisdiction over Luz for the purpose of entering a decree of divorce.
3.     Whether the circuit court erred in concluding that Duane did not perpetrate a fraud upon Luz or the court.
4.     Whether the circuit court erred by not finding that the Stipulation was unconscionable in its provision for Luz.
5.     Whether the circuit court abused its discretion by not awarding Luz attorney fees in light of its decision as to jurisdiction in regard to child custody.

## STANDARD OF REVIEW

[¶15.]     "We review findings of fact deferentially, applying the clearly erroneous standard." Zepeda v. Zepeda, 2001 SD 101, ¶19, 632 NW2d 48, 55 (citations omitted). "Clear error is shown only when, after a review of all the evidence, 'we are left with a definite and firm conviction that a mistake has been made.' The trial court's findings of fact are presumed correct and we defer to those

findings unless the evidence clearly preponderates against them." City of Deadwood v. Summit, Inc., 2000 SD 29, ¶9, 607 NW2d 22, 25 (citations and quotations omitted). Further, "[a]bsent clear proof of error, we must defer to the judge's firsthand perception of the witnesses and the significance the judge gave to their testimony." *Zepeda*, 2001 SD 101, ¶19, 632 NW2d at 55 (citation omitted). "Conclusions of law are reviewed under a de novo standard, giving no deference to the circuit court's conclusions of law." *City of Deadwood*, 2000 SD 29, ¶9, 607 NW2d at 25 (citations omitted). We review a circuit court's ruling as to the allowance or disallowance of costs and attorney fees in a divorce action under the abuse of discretion standard. Strickland v. Strickland, 470 NW2d 832, 839 (SD 1991) (citing Pochop v. Pochop, 89 SD 466, 233 NW2d 806 (1975)).

## ANALYSIS AND DECISION

[¶16.]  **1.  Whether the circuit court erred in concluding it had subject matter and personal jurisdiction over the parties, enabling it to enter a decree of divorce in South Dakota.**

[¶17.]  Luz argues that neither she nor Duane were residents of South Dakota and as such theirs was a marriage outside the state over which the circuit court had neither subject matter nor personal jurisdiction to enter a decree of divorce. The circuit court has subject matter jurisdiction over all divorce actions. SDCL 16-6-9(4). For the circuit court to have personal jurisdiction in a divorce action, the plaintiff must be, at the time the divorce action is commenced, either a resident of this state or stationed in this state as a member of the armed services. SDCL 25-4-30. For the circuit court to enter a decree or judgment of divorce, the plaintiff's residence or military presence must be maintained until the decree is entered. *Id*.

The Iowa Supreme Court set out a principle by which residency should be measured for the purpose of establishing jurisdiction in divorce cases. The court in *Snyder v. Snyder* said:

> [I]t follows that the residence must be an actual residence as distinguished from a temporary abiding place, and, further than this, it must not be a residence solely for the purpose of procuring a divorce only. In *Hinds v. Hinds*, [1 Iowa 36 (1855)], it was held that a legal residence, not an actual residing alone, but such a residence as that, when a man leaves it temporarily on business, he has an intention of returning to, and which, when he has returned, becomes, and is, de facto and de jure, his domicile.

35 NW2d 32, 33-34 (Iowa 1949) (citing Girdey v. Girdey, 238 NW 432 (Iowa 1931)). *See also* Yost v. Yost, 72 NW2d 689, 694-95 (Neb 1955) (recognizing the principle that residency for purposes of a divorce action is not established when the sole purpose for the residency is to obtain the divorce).

[¶18.] Duane testified that he had always considered himself a resident of South Dakota. Duane also introduced evidence that Luz and he listed Jones County, South Dakota as their county of residence when filing their federal income tax returns. Duane extinguished any doubt about his intentions to establish a home in South Dakota following his Air Force retirement, when in 1996 he filed IRS Form 2058, designating South Dakota as his state of legal residence. In or around 1996, Duane began acquiring property in the Draper area with intentions of constructing and establishing a home for his family. It was established during the December 15, 2005 hearing that he had obtained a South Dakota driver's license and also had registered vehicles in the state. In addition, Duane testified to and introduced evidence indicative of his participation in Draper community activities

and organizations. In 2000, he registered to vote in Jones County and by 2001, he had begun construction of his permanent residence, which he had lived in for over three years by the time he commenced the divorce action.

[¶19.]     The circuit court heard abundant evidence that Duane had lengthy ties to South Dakota, and Draper in particular, which endured throughout his military career, culminating with the making of his home there following his retirement from the Air Force. We conclude that there is nothing to indicate that Duane established this residency for purposes of obtaining a divorce. Therefore, we find no error in the circuit court's finding that he was a resident of South Dakota and hence no error in its conclusion that it had personal and subject matter jurisdiction over the parties in this proceeding.

[¶20.]     **2.     Whether the circuit court erred in finding that Luz was properly served with the summons and complaint, thereby satisfying the statutory notice requirements and conferring to the circuit court jurisdiction over Luz for the purpose of entering a decree of divorce.**

[¶21.]     Luz testified that in September 2004, Duane had given her only the signature pages of some documents with instructions that she should sign them. She now claims that this was presumably the admission of service accompanying the notice and summons and complaint. Luz asserts that personal service by Duane was a violation of SDCL 15-6-4(c),[2] thereby constituting defective service. Hence,

_____

2.     SDCL 15-6-4(c) provides in pertinent part:

The summons may be served by the sheriff or a constable of the county or other comparable political subdivision where the defendant may be found, . . . or by any other person *not a party to the action* . . . .

(continued . . .)

Luz contends the circuit court lacked jurisdiction over her and that its decree of divorce should be vacated. *See* Nolan v. Nolan, 490 NW2d 517, 520 (SD 1992) (quoting Tucker v. Johnson, 628 SW2d 281, 283 (Ark 1982)) (noting that "[j]udgments by default rendered without valid service of notice are judgments rendered without jurisdiction and are therefore void").

[¶22.]     A summons is properly served upon a defendant in any action by mailing a copy of the summons and two copies of the notice and admission of service, assuming a copy of the admission of service is signed and returned by the party being served.  SDCL 15-6-4(i).  There was evidentiary support for the circuit court's finding that Luz received proper service of the summons and complaint.  The summons and complaint and two copies of the notice and admission of service were drafted by Duane's attorney in Pierre.  Robbie Hanson, secretary at the law office of Duane's attorney, filed an affidavit stating that she mailed these documents by certified mail, return receipt requested.  Attached to her affidavit was the original of the mailing receipt she received after depositing the parcel in the mail on September 24, 2004.  Duane filed an affidavit that included a copy of the return receipt signed by Luz.[3]  Luz provided no evidence that Duane served her in person other than her bald assertion.  She admitted during the hearing that she signed the

_____

(. . . continued)
     (Emphasis added).

3.     Luz testified at the hearing and still claims that the signature on the return receipt is not hers.  She alleges that her signature was forged on the return receipt.  However, she offers no evidence concerning the invalidity of the signature other than her testimonial claim.

admission of service in Maricopa County on September 28, 2004. She then returned it as instructed to Duane's attorney.[4]

[¶23.] Noting that the circuit court found Luz not to be credible, we refuse to pass judgment on the finder of fact that was present and able to assess the veracity of Luz's testimony. We therefore conclude there was no error in the circuit court's finding that service upon Luz was proper, and hence no error in its conclusion that it had personal and subject matter jurisdiction over her in this proceeding.

[¶24.] **3. Whether the circuit court erred in concluding that Duane did not perpetrate a fraud upon Luz or the court.**

[¶25.] Luz asserts that Duane perpetrated a fraud on her and the court, claiming her signature on the Stipulation and admission of service was procured through deception. Alternatively, she contends that the Stipulation itself was a fraud, claiming that because of her devout Catholicism and Paraguayan cultural background, divorce is abhorrent to her and but for her alleged incompetence in English, she would never have entered into the Stipulation.[5] She also claims fraud on the basis that but for her alleged incompetence in the English language, lack of

---

4. Luz testified at the hearing and still claims that the printed portion of the notice and admission of service was in Duane's handwriting. However, she offers no evidence in support of this allegation other than her testimonial claim. Further, she cites no authority that would support invalidating her admission of service were it found that the printed portion had been filled out by someone other than her.

5. Despite her alleged aversion to divorce, by November 23, 2005, Luz had commenced her own divorce action against Duane in Arizona. At the conclusion of the November 23, 2005 hearing at the Hughes County Courthouse in Pierre, a Hughes County sheriff's deputy waited in the hall to serve Duane with the Arizona summons and complaint.

knowledge of Duane's financial condition and his physical and mental coercion, she would never have entered into an agreement treating her in a manner so disparate from Duane. To this end, Luz argues that she is entitled to have the circuit court's decree of divorce vacated as provided under SDCL 15-6-60(b).[6]

[¶26.] Underlying the circuit court's conclusion that Duane perpetrated no fraud were its findings that she was properly served with the summons and complaint and signed the admission of service; she signed the Stipulation setting out the conditions of the divorce while in the presence of a notary public, which properly acknowledged her signature; there was no credible evidence that Duane ever threatened or coerced Luz in any way; she was a college graduate and had no problem understanding or conversing in English; at times she would feign a lack of understanding or inability to understand English; the parties were mutually aware of their respective financial conditions through disclosure and Luz had full and independent knowledge of Duane's financial condition.

[¶27.] Although Luz testified that she signed the admission of service on September 28, 2005, she contends that she never saw the summons and complaint.

---

6. SDCL 15-6-60(b) provides in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) Mistake, inadvertence, surprise, or excusable neglect;

. . .

(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]

Her claim though, is only supported by her testimony, which the circuit court found not to be credible. Luz also testified that she had no recollection of signing the Stipulation.[7] However, her signature on the Stipulation was acknowledged by a notary public. *See* Northwestern Loan and Banking Co. v. Jonasen, 11 SD 566, 79 NW 842-43 (1899) (recognizing that an acknowledged signature creates a legal presumption of validity that cannot be overcome by the uncorroborated testimonial denial of the party that signed the document, "but only upon proof so clear and convincing as to amount to a moral certainty"). Further, Duane testified that when they went to the notary, he witnessed that Luz first read through the Stipulation before signing. He stated that the only change between the original and final drafts was the deletion of the $1,500 monthly alimony provision and the addition of the $45,000 lump sum payment. Duane further stated that before signing, Luz asked him about the timing of the payment.

---

7. Luz filed a motion to reconsider her motion to vacate the decree of divorce based on new evidence. The motion to reconsider was heard by the circuit court on April 26. At that time, Luz attempted to admit the affidavit of the Maricopa County Notary Public, who acknowledged the signatures of Duane and Luz on the Stipulation. The circuit court rejected Luz's motion to reconsider and we agree that the affidavit properly was not accepted. The notary acknowledged the signatures on September 21, 2004, but the affidavit was not sworn until April 25, 2006—over four months after the hearing on Luz's motion to vacate. Furthermore, close inspection of the affidavit reveals that the notary had no independent knowledge of the details of the signing ceremony. *See* Basin Elec. Power Co-op. v. Gosch, 90 SD 222, 228, 240 NW2d 96, 99 (1976) (recognizing that evidence constituting the basis of a motion for a new trial must first be shown to be new, that it could not, by reasonable diligence, have been produced at trial and that it would be believed by the finder of fact and would produce a different result).

[¶28.] The only evidence of Duane's physical or mental coercion was Luz's testimonial claim. As previously noted, the circuit court found Luz not to be a credible witness. While Luz claimed to have difficulty with English, particularly in its written form, Duane introduced evidence of Luz's proficiency with the English language. On August 7, 2003, Luz was awarded an associates degree in applied science and organizational leadership from Estrella Mountain Community College in Avondale, Arizona. Luz's college transcript indicates that between 1999 and 2003, she had scored almost exclusively "As" and "Bs" in numerous business and management related courses, including courses in computers, business communications, small business customer relations, financial and cash management for small business and business bookkeeping and tax preparation. In addition, she had completed ENG 107 English Composition and a course in critical and evaluative reading. In 1995, Luz took ENG 071 Fundamentals of Writing and in 1998, she completed ENG 061 Basic Writing Skills. Duane testified as to the course content of her degree and that "[t]here wasn't a word of Spanish" included in it.

[¶29.] Moreover, Duane testified that Luz had taught part time as an "English teacher, English as a second language helper at the local grade school."[8] Duane also submitted Luz's resume from 1999, indicating that she possessed both "English and Spanish fluency." Despite her fluency in English, Duane testified that on occasion, Luz would feign a lack of understanding of English as a convenient

---

8. Duane's testimony on this point was corroborated by Luz's Exhibit "G" consisting of IRS W2 Forms from the elementary school in Litchfield Park.

ploy. However, he stated, with respect to her English comprehension, "she understood what was going on, especially when it was something in her favor."

[¶30.]     Finally, Duane testified that he had substantial assets before he and Luz wed and that he always kept his money separate from hers. Nevertheless, Luz had complete knowledge of his financial condition. Luz had full access to his office at the house in Litchfield Park. Duane stated that seldom would he return home and find even one piece of mail addressed to him that Luz had not already opened. Included in these mails were statements and correspondences from various financial institutions revealing all of his financial holdings.

[¶31.]     Based on the foregoing, we conclude there was sufficient evidence to support the circuit court's findings underlying its conclusion that Duane perpetrated no fraud. Therefore, the circuit court committed no error in this regard.

[¶32.]     **4.     Whether the circuit court erred by not finding that the Stipulation was unconscionable in its provision for Luz.**

[¶33.]     Luz argues that the Stipulation is unconscionable in that it leaves her at a financial disadvantage to Duane. The circuit court concluded that even if Luz had made a bad bargain, it constituted no ground on which to vacate the decree of divorce as to the terms of the property division. *See* Leonard v. Leonard, 529 NW2d 208, 210 (SD 1995) (quoting Jeffries v. Jeffries, 434 NW2d 585, 588 (SD 1989) (acknowledging that "a divorce decree which incorporates a property settlement agreement is a final and conclusive adjudication which is *not* subject to later modification") (emphasis in original)); Weekley v. Weekley, 1999 SD 162, ¶19, 604

NW2d 19, 24 (quoting Jameson v. Jameson, 1999 SD 129, ¶20, 600 NW2d 577, 582 (citing Olson v. Olson, 1996 SD 90, ¶11, 552 NW2d 396, 399; Whalen v. Whalen, 490 NW2d 276, 283 (SD 1992); Jameson v. Jameson, 90 SD 179, 239 NW2d 5, 7 (SD 1976) (*Jameson I* ))) (acknowledging the principle that "it is not the role of courts in modification proceedings to relieve a party of his or her bad bargain" in a case where the plaintiff, who resided in South Dakota with the child, was denied a motion to modify child support where the marital dissolution agreement that was entered in California expressly granted exclusive jurisdiction over child support to the California court); Jacobson v. Jacobson, 2000 SD 60, ¶14, 611 NW2d 210, 215 (citing *Jamison I*, 90 SD at 184, 239 NW2d at 7) (recognizing the proposition that a party's subsequent revelation that he has entered into a divorce stipulation treating him harshly by its terms does not constitute changed circumstances warranting modification).

[¶34.] Underlying its conclusion, the circuit court found that Luz understood the Stipulation; she did receive substantial assets from Duane; and she willingly agreed to the property division after negotiating its terms. The circuit court also found that Luz had access to professional legal advice from her sister, who is an attorney, and from the office of legal assistance at Luke Air Force Base.

[¶35.] The Stipulation expressly provided that Duane and Luz would retain sole ownership of their individually held assets and any other solely held property. After Duane refused to purchase condominiums in Paraguay in July 2004, Luz told him that in lieu of the $1,500 monthly alimony provision in the original draft stipulation, she would take a lump sum payment of $45,000. Duane then contacted

his attorney and told him to make the change as requested by Luz. The Stipulation thus provided that Duane would make a lump sum payment to Luz of $45,000.

[¶36.] Although the Stipulation characterizes the payment as a loan, Duane testified that in reality the $45,000 was a payment. Duane stated that Luz intended to use these funds to purchase the condominiums in Paraguay that he had inspected in July 2004. The Stipulation provided that the $45,000 "loan" would be secured by the condominiums. Duane indicated that in fact Luz had liquidated her retirement account prior to entry of the divorce decree, sending $15,000 to her brother in Paraguay, presumably to be used for purchasing the condominiums.

[¶37.] Cognizant of the substantial sums of money that Luz had sent to her family in Paraguay, for which there was little or no accounting for or income derived from, Duane testified that the "loan" provision in the Stipulation was merely intended to ensure that her brother would transfer the title in the condominiums to Luz. Duane further testified that the "loan" was secured only by a promissory note and that no encumbrance had been placed on the property. In short, Duane expected no repayment of the "loan" and considered that its value to him was "worthless."

[¶38.] Duane also testified that Luz had been in frequent communication with her sister during 2004. In addition to his testimony, he submitted phone records indicating that Luz had been in regular communication with her sister during the pendency of the divorce. In addition, he also submitted evidence indicating that Luz had an attorney that she dealt with at the Luke Air Force Base, office of legal assistance.

[¶39.]     During his testimony, Duane stated that the first indication he had that Luz was having second thoughts about the terms of their divorce was in March 2005.  Luz had been in Paraguay following the entry of the divorce decree.  Duane indicated that when she returned, she told him that she wanted him to either remarry her or give "her another big bunch of money" and if he refused, she would seek to have the decree of divorce vacated.

[¶40.]     We conclude there was sufficient evidence to support the circuit court's findings that the Stipulation was not unconscionable.  Therefore, the circuit court committed no error in this regard.

[¶41.] `     **5.     Whether the circuit court abused its discretion by not awarding Luz attorney fees in light of its decision as to jurisdiction in regard to child custody.**

[¶42.]     Luz contends that the circuit court vacated the provisions of the Stipulation in regard to child custody and that in so far as she was the "prevailing" party as to this matter, she is entitled to attorney fees in the amount of $2,915.96.

[¶43.]     Under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) enacted in South Dakota under SDCL chapter 26-5B, a court that has jurisdiction to make a child custody determination, because the state in which the court resides was the home state of the child on the date of the commencement of divorce proceedings, may decline to exercise jurisdiction on the ground that the court of another state is a more appropriate forum.  *See* SDCL 26-5B-201.  The circuit court's incorporated decision recognized that the minor child of Duane and Luz had lived in Arizona until August 25, 2005, and had not lived in South Dakota for six months at the time Duane commenced the divorce action.  Rather than

vacating the Stipulation as to child custody matters, the circuit court, in consultation with the Superior Court of Maricopa County, Arizona, merely agreed to defer to that court's jurisdiction for purposes of child custody, support and visitation. This is further reflected in the defendant's proposed findings of fact and conclusions of law, signed after modification by the circuit court. Conclusion of Law 2 appears as follows:

> Under SDCL § 26-5A-3 and SDCL § 26-5A-2(5)[9] Arizona is the home state of the parties [sic] Minor Child and the provisions of the Stipulation and Agreement and Divorce Decree which apply to child custody, visitation and support shall be ~~vacated and~~ handled by the Arizona Courts.

[¶44.] The fact that the circuit court struck the words "vacated and" indicates it intended not for the child custody provisions of the Stipulation to be vacated, but rather they should be reviewed by the Arizona court, to which the circuit court defers as to this matter. Luz has yet to prevail on the matter of child custody. That question will ultimately be determined by the Arizona court. As it is within the discretion of the circuit court to defer jurisdiction on the matter of child custody to the Arizona court, so to it is within the circuit court's discretion to defer to that court on the issue of attorney fees and costs.

[¶45.] Alternatively, the record reveals that Luz waived the issue prior to appeal. Luz's application for attorney fees was heard on April 26, 2006, along with

---

9. By the time the circuit court convened this hearing, the Uniform Child Custody Jurisdiction Act, enacted under SDCL chapter 26-5A, had been repealed by the South Dakota Legislature in favor of the UCCJEA under SDCL chapter 26-5B.

various other motions.  At the hearing Luz failed to argue the issue of attorney fees.

For that reason, the issue is not properly considered on appeal.

[¶46.]     Affirm.

[¶47.]     SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices,

concur.